**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| DAVID M. ROGOWSKI, ELIZABETH A. BALLY, KATHY BAUER, KIM BOTTE, JOHN E. JAUNICH, MYLENE MCCLURE *as personal representative of* THE ESTATE OF EARL L. MCCLURE, RONALD K. PAGE, CHANDRA B. SINGH, JOYCE THOMAS, DAVID TOMS, and WILLIAM T. WHITMAN, Individually and On Behalf Of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>STATE FARM LIFE INSURANCE COMPANY and STATE FARM LIFE AND ACCIDENT ASSURANCE COMPANY,<br><br>                Defendants. | Case No.  4:22-cv-00203-RK |

**UNOPPOSED[1] MOTION PURSUANT TO RULE 23(E) FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Norman E. Siegel, MO Bar # 44378      John J. Schirger, MO Bar # 60583
Bradley T. Wilders, MO Bar # 60444     Matthew W. Lytle, MO Bar # 59145
Lindsay Todd Perkins, MO Bar # 60004   Joseph M. Feierabend, MO Bar # 62563
Ethan M. Lange, MO Bar # 67857
David A. Hickey, MO Bar # 62222

**STUEVE SIEGEL HANSON LLP**       **MILLER SCHIRGER, LLC**

*Attorneys for Plaintiffs and the Putative Settlement Class*

---

[1] Defendants do not oppose the relief sought by this motion and agree that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, State Farm does not concede the factual basis for any claim and denies liability. The description of the proceedings, including prior proceedings and proceedings in the related cases, as well as legal, factual and expert arguments, is Plaintiffs', and State Farm may disagree with certain of those characterizations and descriptions. State Farm reserves the right to challenge Plaintiffs' characterizations and descriptions.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

I. INTRODUCTION .................................................................................. 1

II. SUMMARY OF THE LITIGATION ..................................................... 3

    A. The Claims ................................................................................... 3

    B. History of the Litigation .............................................................. 5

    C. Settlement Negotiations ............................................................. 23

III. SUMMARY OF THE SETTLEMENT ................................................ 24

IV. THE SETTLEMENT CLASS ............................................................... 26

V. ISSUING NOTICE TO THE SETTLEMENT CLASS IS JUSTIFIED. .......................... 26

    A. Standard for Issuance of Notice. ............................................... 26

    B. The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Factors Identified in Rule 23(e) and *Van Horn*. ...................................... 28

        1. The Class Representatives and Class Counsel Have Provided Excellent Representation to the Class. ................................................. 28

        2. The Settlement Is the Product of Arm's Length Negotiations. ................ 30

        3. The Relief Provided by the Settlement Is Excellent. ............................... 31

            a. The duration, costs, risks, and delay of trial and appeal support approval of the Settlement. ............................................ 31

            b. The effectiveness of the proposed method of distributing relief to the Settlement Class supports approval of the Settlement. ....... 35

            c. The terms for the award of attorneys' fees, including the timing of payment, support approval of the Settlement. ......... 36

            d. There is no agreement required to be identified under Rule 23(e)(3). ....................................... 38

        4. The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement. ...................................... 39

        5. State Farm's Financial Condition. ............................................. 39

6. The Amount of Opposition to the Settlement Supports Approval ............... 40

VI. The Settlement Class Meets the Requirements for Certification For Purposes of Settlement. ..................................................................................................... 41

 A. Standard for Certifying Settlement Class. ................................................ 41

 B. The Settlement Class Satisfies the Requirements of Rule 23. .................. 41

  1. The Settlement Class meets each of the requirements of Rule 23(a) ...................................................................................... 41

  2. The Settlement Class meets the requirements of Rule 23(b)(3). .. 43

VII. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS INTERIM CLASS COUNSEL. ................................................................. 45

VIII. THE NOTICE SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS. ........ 45

IX. THE COURT SHOULD APPOINT EPIQ AS SETTLEMENT ADMINISTRATOR. ... 47

X. PROPOSED TIMELINE OF EVENTS ........................................................... 47

CONCLUSION ................................................................................................. 47

**TABLE OF AUTHORITIES**

**Cases**

*Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.,*
   2022 WL 911739 (D. Minn. Mar. 29, 2022) ........................................................... 42

*Advance Trust & Life Escrow Services, LTA v. North Am. Co. for Life and Health Ins.,*
   --- F. Supp. 3d ----, 2022 WL 883750 (S.D. Iowa Mar. 22, 2022) ........................................... 44

*Am. Airlines, Inc v. Wolens,*
   513 U.S. 219 (1995).......................................................................... 44

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997).......................................................................... 44

*Bally v. State Farm Life Ins. Co.,*
   335 F.R.D. 288 (N.D. Cal. 2020)............................................... 28, 42, 43, 44

*Bally v. State Farm Life Ins. Co.,*
   536 F. Supp. 3d 495 (N.D. Cal. 2021) .................................................... 9, 10

*Bally v. State Farm Life Ins. Co.,*
   587 F. Supp. 3d 996 (N.D. Cal. 2022) ....................................................... 10

*Bally v. State Farm Life Ins. Co.,*
   2019 WL 3891149 (N.D. Cal. Aug. 19, 2019) ..................................................... 7, 8

*Bally v. State Farm Life Ins. Co.,*
   2022 WL 594559 (N.D. Cal. Feb. 24, 2022) ................................................... 10

*Bally v. State Farm Life Ins. Co.,*
   2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ................................................... 10

*Barfield v. Sho-Me Power Elec. Co-op.,*
   No. 11-CV-4321-NKL, 2015 WL 3460346....................................................... 36, 37

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980)........................................................................... 36

*Brehm v. Engle,*
   No. 8:07CV254, 2011 U.S. Dist. LEXIS 35127, (D. Neb. Mar. 30, 2011) ............................. 38

*Burnett v. CNO Fin. Grp., Inc.,*
   2022 WL 896871 (S.D. Ind. Mar. 25, 2022).......................................................... 44

*Carlson v. C.H. Robinson Worldwide, Inc.*,
No. 02-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006)...................................... 37

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................................... 34

*Claxton v. Kum & Go, L.C.*,
No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) ............................ 40

*Custom Hair Designs by Sandy v. Cent. Payment Co.*,
984 F.3d 595 (8th Cir. 2020) ....................................................................................... 44

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ................................................................................... 29, 40

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................ 35

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ........................................................................................ 46

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...................................... 37

*Holt v. Community America Credit Union*,
No. 4:19-CV-00629-FJG, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) ..................... 26, 27

*In re Airline Ticket Commission Antitrust Litig.*,
953 F. Supp. 280 (D. Minn. 1997) ................................................................................ 37

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002) .................................................................................. 34

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................................ 36

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*,
No. 01-258, 2003 WL 23335319 (D. Minn. June 16, 2003)....................................... 37, 38

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798 (D. Kan. Nov. 17, 2021)......................... 37

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873 (D. Kan. July 11, 2022)......................... 37

iv

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
   2021 WL 5369815 (D. Kan. Nov. 17, 2021) ................................................................ 37

*In re: Urethane Antitrust Litig.*,
   04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) .................................... 37

*In re Iowa Ready–Mix Concrete Antitrust Litig.*,
   No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ...................... 37

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   No. 14-02567-MD-W-GAF, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) .......... 27

*In re Select Comfort Corp. Secs. Litig.*,
   No. 99-884, 2003 U.S. Dist. LEXIS 26409 (D. Minn. Feb. 28, 2003) .................... 38

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) ................................................................ 37

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ................................................................ 37

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ................................................................ 35

*In re Xcel*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................ 38

*In re Zurn Pex Plumbing Products Liab. Litig.*,
   2013 WL 716088 (D. Minn. Feb. 27, 2013) ................................................................ 33

*Jaunich v. State Farm Life Ins. Co.*,
   569 F. Supp. 3d 912 (D. Minn. 2021) ................................................ 15, 43, 44

*Jaunich v. State Farm Life Ins. Co.*,
   2022 WL 2318560 (D. Minn. June 28, 2022) ................................................ 16

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ................................................................ 36

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ................................................ 33, 34, 39, 45

*Kelly v. Phiten USA, Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) ................................................ 30, 34, 38

*Komoroski v. Util. Serv. Partners Priv. Label, Inc.,*
    No. 4:16-CV-00294-DGK, 2017 WL 3261030 (W.D. Mo. July 31, 2017) ............................ 44

*Marshall v. Nat'l Football League,*
    787 F.3d 502 (8th Cir. 2015) ............................................................................ 35, 39

*Matamoros v. Starbucks Corp.,*
    699 F.3d 129 (1st Cir. 2012) ................................................................................. 43

*McClure v. State Farm Life Ins. Co.,*
    341 F.R.D. 242 (D. Ariz. 2022) ..................................................................... passim

*McClure v. State Farm Life Ins. Co.,*
    2022 WL 2275665 (D. Ariz. June 23, 2022) ........................................................... 18

*McKeage v. TMBC, LLC,*
    847 F.3d 992 (8th Cir. 2017) ................................................................................. 42

*Mullane v. Central Hanover Bank and Trust Co.,*
    339 U.S. 306 (1950) ............................................................................................. 46

*Norem v. Lincoln Benefit Life Co.,*
    737 F.3d 1145 (7th Cir. 2013) ............................................................................ 6, 31

*Page v. State Farm Life Ins. Co.,*
    584 F. Supp. 3d 200 (W.D. Tex. 2022) ................................................... 13, 28, 43, 44

*Page v. State Farm Life Ins. Co.,*
    2022 WL 718789 (W.D. Tex. Mar. 10, 2022) ...................................................... 13, 14

*Paxton v. Union Nat'l Bank,*
    688 F.2d 552 (8th Cir. 1982) ................................................................................. 42

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ............................................................................... 46

*Ray v. Lundstrom,*
    No. 8:10CV199, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) ..................................... 38

*Slam Dunk I, LLC v. Connecticut General Life Ins. Co.,*
    853 F. App'x 451 (11th Cir. 2021) ......................................................................... 31

*Spegele v. USAA Life Ins. Co.,*
    No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ..................... 29

*Swinton v. SquareTrade, Inc.,*
    No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470 (S.D. Iowa Apr. 14, 2020)..................... 26

*Thomas v. UBS AG,*
    706 F.3d 846 (7th Cir. 2013) ...................................................... 44

*Toms v. State Farm Life Ins. Co.,*
    2022 WL 5238841 (M.D. Fla. Sept. 26, 2022) ................................. passim

*Tussey v. ABB, Inc.,*
    850 F.3d 951 (8th Cir. 2017) ...................................................... 38

*Tussey v. ABB, Inc.,*
    No. 06-CV-04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019)............................... 38

*Van Horn v. Trickey,*
    840 F.2d 604 (8th Cir. 1988) ................................................. passim

*Vill. Bank v. Caribou Coffee Co., Inc.,*
    No. 19-CV-1640 (JNE/HB), 2020 WL 13558808 (D. Minn. July 24, 2020) ........................ 30

*Vogt v. State Farm Life Ins. Co.,*
    2017 WL 471574 (W.D. Mo. Feb. 3, 2017) ............................................. 5

*Vogt v. State Farm Life Ins. Co.,*
    2017 WL 1498073 (W.D. Mo. Apr. 26, 2017) ........................................... 6

*Vogt v. State Farm Life Ins. Co.,*
    2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) ........................................... 6

*Vogt v. State Farm Life Ins. Co.,*
    2018 WL 1955425 (W.D. Mo. Apr. 24, 2018) ..................................... passim

*Vogt v. State Farm Life Ins. Co.,*
    2021 WL 247958 (W.D. Mo. Jan. 25, 2021) ........................................... 37

*Vogt v. State Farm Life Ins. Co.,*
    963 F.3d 753 (8th Cir. 2020) ................................................. 29, 43

*West v. PSS World Med., Inc.,*
    No. 4:13 CV 574 CDP, 2014 WL 1648741 (E.D. Mo. April 24, 2014) ....................... 37, 38

*Whitman v. State Farm Life Ins. Co.,*
    2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) ................................... passim

*Whitman v. State Farm Life Ins. Co.*,
    2022 WL 4081916 (W.D. Wash. Sept. 6, 2022) ...................................................... 12

*Wiles v. Sw. Bill Tel. Co.*,
    No. 09-4236-CV-C-NKL, 2011 WL 2416291 (W.D. Mo. June 9, 2011) ............................... 38

*Yarrington v. Solvay Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ...................................................................... 37

**Statutes**

28 U.S.C. § 1292 .......................................................................................................... 8

New York Gen. Bus. Law § 349 ................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

**Other Authorities**

Principles of the Law of Aggregate Litigation § 3.04 (2010) ....................................... 46

# I. INTRODUCTION

Plaintiffs David M. Rogowski, Elizabeth A. Bally, Kathy Bauer, Kim Botte, John E. Jaunich, Mylene McClure as personal representative of the Estate of Earl L. McClure, Ronald K. Page, Chandra B. Singh, Joyce Thomas, David Toms, and William T. Whitman ("Plaintiffs") brought this Action against State Farm Life Insurance Company and the related entity State Farm Life and Accident Assurance Company (collectively, "State Farm") for the alleged breach of the terms of their standardized universal life insurance policies by deducting cost of insurance charges from policy owners' Account Value in amounts greater than the policies authorize. This case, as recently amended, consolidates 10 pending lawsuits against State Farm for these alleged contractual breaches, and asserts claims on behalf of a nationwide class.

Now, after over 6 years of intensive and contentious litigation in multiple district and appellate courts, which included dispositive rulings favoring both sides, Plaintiffs and State Farm (the "Parties") have agreed to a nationwide settlement (the "Settlement"). They have executed a binding Settlement Agreement ("Agreement"), under which State Farm will pay $325,000,000 into a non-reversionary Settlement Fund that will be used to provide payments to members of the Settlement Class in amounts representing a material portion of the alleged overcharges they each suffered. As far as counsel can discern, this is the largest cash settlement in a lawsuit challenging cost of insurance rates for universal life insurance. And, as explained below, the Agreement is an outstanding result for the Settlement Class and should ultimately be approved as fair, reasonable, and adequate.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), the first step in effectuating the terms of the Settlement is to issue Notice to the Settlement Class. Under Rule 23(e), directing notice to a settlement class is justified where the Court concludes it will likely be able to (1) approve the settlement as fair, reasonable, and adequate, and (2) certify the settlement class for

purposes of judgment on the settlement. Notice to the Settlement Class should issue here because the terms of the Agreement are a fair, reasonable, and adequate settlement of the claims asserted in this litigation, and the proposed Settlement Class satisfies the requirements of Rule 23. The Agreement is the product of arm's length negotiations between the Parties and was reached only after extensive discovery, thorough vetting of the procedural and merits issues through a lengthy litigation process, and three mediation sessions with the assistance of two highly respected, neutral mediators. The pre-settlement risks Plaintiffs faced make the non-reversionary cash Settlement Fund in the amount of $325,000,000 an excellent result for the Settlement Class Members.

The Settlement Fund will be used to pay (1) all payments to Settlement Class Members; (2) fees and expenses incurred in providing Class Notice and administering the Settlement, including those fees and expenses incurred by the Settlement Administrator; (3) any Service Awards to Plaintiffs awarded by the Court; and (4) any attorneys' fees and reimbursement of expenses awarded by the Court. Importantly, Settlement Class Members are not required to submit a "claim" or otherwise perform any steps to receive their Settlement checks. Settlement checks will be issued upon final approval of the Settlement and resolution of any appeals. Finally, dissemination of Class Notice by first-class mail is appropriate and the Parties have engaged a third-party administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), with extensive experience in this area to administer the Settlement and Class Notice plan.

Accordingly, pursuant to Rule 23(e), Plaintiffs request that the Court preliminarily approve the Settlement and permit the issuance of Notice to the Settlement Class; appoint the undersigned Plaintiffs' counsel as Class Counsel under Rule 23(g)(3); approve the form and manner of Notice to the Settlement Class; appoint Epiq to administer the Class Notice plan and to fulfill the duties

2

of the Settlement Administrator as outlined in the Agreement; and schedule a Fairness Hearing to determine whether the Settlement should be finally approved.[2]

## II.     SUMMARY OF THE LITIGATION

### A.     The Claims

Plaintiffs each own at least one standardized life insurance policy sold by State Farm on Form 94030/A94030 (the "Policy"). Doc. 46 (Second Amended Class Action Complaint) ("Compl.") ¶¶ 6-16, 22-24. The Policy is or was a valid and enforceable contract between each policy owner and State Farm. Compl. ¶ 27; Policy at 11. The Policy's terms are not subject to individual negotiation and are the same for all policy owners. The Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings; and State Farm's obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." Compl. ¶¶ 29-30; Policy at 11.

The Policy is a "universal life" insurance product, which is sold as permanent life insurance providing both a death benefit and an investment feature that allows the owner to pay premiums into a policy account called the Account Value. Compl. ¶¶ 3, 31-32. The monthly calculation of the Account Value is set forth in the Policy. *Id.* ¶ 37. The Account Value can grow over time with additional premium payments and applicable interest as identified in the Policy. *Id.* ¶¶ 32, 37. The Policy describes the formula for calculation of the Account Value each month:

> The account value on any deduction date after the policy date is the account value on the prior deduction date:
>
> (1) plus 95% of any premiums received since the prior deduction date,

---

[2] The Parties have notified all the courts overseeing the constituent cases of the Settlement, and, contemporaneous with this filing, have filed joint motions to stay those actions until the settlement approval process is completed in this case. Most of the courts have already granted the motions, staying their proceedings until conclusion of the approval process in this Court.

(2) less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,

(3) less any withdrawals since the prior deduction date,

(4) *less the current monthly deduction*,

(5) plus any dividend paid and added to the account value on the current deduction date, and

(6) plus any interest accrued since the prior deduction date.

*Id.* ¶ 37; Policy at 9 (emphasis added).

The "Monthly Deduction" is comprised of two distinct component charges: the cost of insurance charge ("COI Charge") and the "monthly expense charge" equal to $5 a month ("Expense Charge").[3] Compl. ¶¶ 40-42; Policy at 3, 9-10. If the Account Value is not sufficient to cover the Monthly Deduction, then the life insurance terminates. Compl. ¶ 5; Policy at 3, 9. The Policy provides that the COI Charges are determined by multiplying the Monthly Cost of Insurance Rates ("COI Rates") by the Policy's net amount at risk (the amount by which the death benefit amount exceeds the Account Value, i.e., the amount of its own funds State Farm must pay if the insured dies). Compl. ¶ 42; Policy at 10. The Policy states that the COI "rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." Compl. ¶ 43; Policy at 10. State Farm also sold universal life insurance on Form 94080, which is materially identical to Form 94030/A94030 except the COI Rates are not differentiated by the sex of the insured. Compl. ¶ 43; Ex. 2 (Siegel Dec.), ¶ 182.

Plaintiffs allege that the factors specified in the COI Rates provisions of Forms 94030/A94030 and 94080/A94080 (collectively, the "Policies") are characteristics known to define an insured's mortality risk, and that the Policies do not authorize State Farm to consider

---

[3] If applicable, monthly charges for any riders make up a third component of the Monthly Deduction. Compl. ¶ 40; Policy at 9.

additional factors beyond the identified mortality factors to determine policy owners' COI Rates. Compl. ¶¶ 44-49. Plaintiffs allege that despite lacking authorization in the Policies to do so, State Farm uses unlisted, non-mortality factors to load the COI Rates to recover expenses and additional profits in repeated breach of the Policies' COI Rates provisions. Compl. ¶¶ 51-53, 71-78. Plaintiffs also allege that the Monthly Deduction's $5 Expense Charge prohibits State Farm from deducting more than $5 in expenses in each Monthly Deduction. Plaintiffs allege that despite this limitation, State Farm deducts both the full $5 Expense Charge disclosed by the Policies through each Monthly Deduction and additional undisclosed expenses through each Monthly Deduction's COI Charge in repeated breach of the Policies' Expense Charge provision. *Id.* ¶¶ 54-55, 79-82. Plaintiffs further allege that these unauthorized deductions are conversions of their money. *Id.* ¶¶ 83-89.

## B. History of the Litigation.

This settlement follows a jury verdict in a now-resolved case raising claims related to the Cost of Insurance charges taken under the Policies and directly resolves similar claims brought in this and nine other cases with differing results that have been extensively litigated by the Parties across the country before nine different judges. A summary of the litigation is recounted below.

### *Vogt v. State Farm Life Insurance Co.*

The first case against State Farm asserting these claims was filed in the Western District of Missouri on June 15, 2016, by Plaintiff Michael Vogt. *See Vogt v. State Farm Life Ins. Co.*, No. 16-CV-04170-NKL. After the district court denied State Farm's motion to dismiss (*see id.*, Docs. 52 and 71),[4] the parties engaged in an extensive discovery process involving several rounds of

---

[4] *Vogt*, 2017 WL 471574 (W.D. Mo. Feb. 3, 2017) (denying motion to dismiss on the basis of the statute of limitations but granting the motion as to the plaintiff's conversion claim pursuant to the economic loss doctrine); *Vogt*, 2017 WL 1498073 (W.D. Mo. Apr. 26, 2017) (reconsidering dismissal of conversion claim and reinstating that claim).

5

written discovery and numerous fact and expert witness depositions by both parties. Siegel Dec., ¶ 9. On November 14, 2017, the plaintiff moved for certification of a class of Missouri Form 94030 policy owners. *Vogt*, Docs. 145, 150. In December 2017, at the same time that State Farm filed its opposition to the motion for class certification, it also moved for summary judgment on each of Vogt's claims, contending the Policy's "based on" language permitted State Farm to include unlisted factors in the COI Rates under the reasoning in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013), and that plaintiff's claims were barred by the statute of limitations. *Vogt*, Docs. 166, 172, 173. On April 10, 2018, the district court denied State Farm's motion for summary judgment, finding the Policy did not permit State Farm to load the COI Rates with undisclosed factors and concluding plaintiff's claims were not barred by the statute of limitations because the COI overcharges were not ascertainable. *Vogt*, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018).

On April 24, 2018, the court granted plaintiff's motion for class certification, *Vogt*, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018), and set the jury trial to commence on June 1, 2018. The court later granted Plaintiffs partial summary judgment on the class's contract claims, leaving only the assessment of damages for trial, but concluding judgment could not be entered on the class's conversion claim without the assessment of the amount converted at trial, and granting judgment in favor of the class on State Farm's statute of limitations defense. *Id.*, Doc. 335. Also, on June 2, the court entered judgment in favor of the class on State Farm's defense that policy owners had consented to State Farm's COI deductions. *Id.*, Doc. 336.

Following a trial, the jury announced its verdict in favor of the class for breach of contract and conversion, finding damages of $34,333,495.81. *Id.* Following various post-trial motions, both parties exhausted their appellate rights, which ultimately resulted in affirmance of the jury's

6

verdict plus post-judgment interest awarded to the class. *See* Eighth Circuit Case Nos. 18-3419, 18-3434.

### Bally v. State Farm Life Insurance Co.

On August 15, 2018, Plaintiff Elizabeth A. Bally, a Form 94030 policy owner whose Policy was issued by State Farm in California, filed a class action complaint in the Northern District of California asserting the same claims on behalf of California policy owners that were asserted in *Vogt*. *See Bally v. State Farm Life Ins. Co.*, 3:18-CV-04954-CRB (N.D. Cal.).

On May 21, 2019, during the discovery phase of the case, State Farm filed its first motion for summary judgment on all claims, contending that the Policy permitted State Farm's inclusion of non-mortality loads in the COI Rates under the reasoning of the Seventh Circuit in *Norem*, that a claim for conversion could not be stated under California law on an overcharge theory, and that Plaintiff's claims were barred by the statute of limitations. *Bally*, Doc. 63.

On August 19, 2019, the court issued its order denying State Farm's motion for summary judgment, concluding Plaintiff's interpretation of the Policy was reasonable considering its plain language, common usage of the terms, and other courts' interpretations of similar COI rates provisions, including the district court in *Vogt*. *Bally*, 2019 WL 3891149, at *4-8 (N.D. Cal. Aug. 19, 2019). The court also concluded Plaintiff's conversion claim was not premised on a mere overcharge; instead, it was for the improper transfer of funds from policy owners' Account Values, and therefore was properly stated under California law. *Id.* at *4. The court also concluded policy owners' claims were not barred by the statute of limitations pursuant to California's discovery rule. *Id.* at *3-4. On September 16, 2019, State Farm moved for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) as to the interpretation of the Policy and for a stay of the case. *Bally*, Doc. 81.

On November 15, 2019, Plaintiff filed a motion for certification of a class of California Form 94030 policy owners with the expert report of Plaintiff's class certification damages expert, Scott Witt. *Id.*, Doc. 93. On November 25, 2019, the court granted State Farm's motion to file an interlocutory appeal, finding that its ruling was subject to reasonable grounds for a difference of opinion, but denied its request for a stay. *Id.*, Doc. 99. On December 5, 2019, State Farm filed a petition for permission to appeal pursuant to § 1292(b) in the Ninth Circuit Court of Appeals. *See* Ninth Circuit Case No. 19-80160.

On January 27, 2020, after full briefing, the Ninth Circuit denied State Farm's petition to appeal the district court's interpretation of the Policy. *See* Ninth Circuit Case No. 19-80160. On February 10, 2020, State Farm filed its motion for reconsideration of the denial, which the Ninth Circuit denied on May 14, 2020. *Id.*

On October 26, 2020, Plaintiff moved for partial summary judgment, arguing: the court's prior conclusion that Plaintiff's interpretation of the Policy was reasonable entitled Plaintiff and the class to judgment as a matter of law on State Farm's liability for breach of the COI Rates provision and for conversion; that State Farm should be deemed collaterally estopped from challenging facts found by the *Vogt* jury, leaving no material facts in dispute as to the damages suffered by the class; and that the class was entitled to summary judgment on State Farm's statute of limitations defense on the basis of the discovery rule. *Bally*, Doc. 142. On November 12, 2020, and January 20, 2021, Plaintiff served trial and rebuttal reports from Mr. Witt. Siegel Dec., ¶ 44. On January 8, 2021, State Farm filed its opposition to Plaintiff's motion for partial summary judgment. *Bally*, Doc. 160. On February 6, 2021, State Farm filed a motion for leave to file a second motion for summary judgment, which the court granted on February 11, 2021. *Id.*, Docs. 185, 187.

On February 24, 2021, State Farm filed a second motion for summary judgment on all claims, arguing: the COI Rates provision unambiguously does not set forth obligations as to how State Farm must determine its COI Rates; instead arguing the provision only references the factors on which State Farm would assign the COI Rates and thus does not prohibit State Farm from including amounts for non-mortality factors in the COI Rates (the "assigned-by" interpretation); that this reading of the COI Rates provision necessarily defeats Plaintiff's reading of the Expense Charge provision; and that the conversion claim failed because State Farm's obligations were merely contractual. *Id.*, Doc. 191

On April 28, 2021, the court issued its order granting State Farm's motion for summary judgment for breach of the COI Rates provision and for conversion and denying Plaintiff's motion for summary judgment on those claims. The court concluded that while the COI Rates provision's use of the term "based on" could infer that the factors that followed were exclusive (as it had previously concluded in denying State Farm's first motion for summary judgment), it concluded that one of the listed factors—"applicable rate class"—unambiguously permitted State Farm to include non-mortality factors therein. *Bally*, 536 F. Supp. 3d 495, 507-508 (N.D. Cal. 2021). The court stated that the district court and Eighth Circuit in *Vogt*, in concluding the COI Rates provision did not unambiguously permit State Farm to use unlisted factors to determine the COI Rates, had focused on the meaning of the phrase "based on," but that neither court "meaningfully considered the meaning of the phrase 'applicable rate class.'" *Id.* at 504 n.6. The court also concluded Plaintiff's conversion claim was barred by the economic loss doctrine. *Id.* at 512-13. However, the court denied State Farm's motion for summary judgment on Plaintiff's claim for State Farm's breach of the Expense Charge provision, concluding Plaintiff's interpretation of that provision as limiting State Farm to $5 in monthly expense deductions was reasonable, invited Plaintiff to file a

motion for partial summary judgment on that claim, and instructed Plaintiff to submit a class-wide damages model specific to that claim. *Id.* at 509-11, 516-17. The court also granted Plaintiff's motion for summary judgment in favor of the class on the statute of limitations. *Id.* at 514-16.

On June 30, 2021, Plaintiff filed a motion for partial summary judgment on State Farm's liability for breach of the Expense Charge provision and for declaratory judgment that State Farm's conduct violated this provision, along with a declaration by Mr. Witt explaining how damages should be calculated on this claim. *Bally*, Doc. 237.

After full briefing on the pending motions, on February 24, 2022, the court granted Plaintiff's motion for partial summary judgment, concluding the Policy's Expense Charge provision unambiguously prohibited State Farm from including undisclosed expenses in the COI Rates,[5] denied State Farm's motion to exclude Mr. Witt's damages methodology,[6] denied State Farm's motion to decertify the class,[7] and denied Plaintiff's motion to exclude State Farm's experts' opinions.[8] The jury trial in this matter was set to commence on January 23, 2023. *Bally*, Doc. 306. The trial setting and related deadlines were vacated upon the Parties' notification to the court that they had signed a term sheet to settle the matter. *Id.*, Doc. 307.

---

[5] *Bally*, 587 F. Supp. 3d 996 (N.D. Cal. 2022).
[6] *Bally*, 2022 WL 594798 (N.D. Cal. Feb. 24, 2022).
[7] *Id.*
[8] *Bally*, 2022 WL 594559 (N.D. Cal. Feb. 24, 2022).

*Whitman v. State Farm Life Insurance Co.*

On October 30, 2019, Plaintiff William T. Whitman, a Form 94030 policy owner whose Policy was issued by State Farm in Washington, filed a class action complaint in the Western District of Washington asserting the same claims on behalf of Washington policy owners as were asserted in *Vogt* and *Bally*, and an additional claim for State Farm's violation of the Washington Consumer Protection Act (WCPA). *See Whitman v. State Farm Life Ins. Co.*, 19-CV-06025-BJR (W.D. Wash.). State Farm filed its Answer on March 30, 2020, denying liability on all claims and asserting thirty-two affirmative defenses, including statute of limitations, laches, and voluntary payment and filed-rate doctrines. *Id.*, Doc. 39.

On February 16, 2021, Plaintiff filed a motion to certify a class of Washington Form 94030 policy owners supported by an expert report of Scott Witt containing a damages methodology and calculations for the putative class. *Id.*, Doc. 67. After full briefing, on September 20, 2021, the court granted Plaintiff's motion for class certification and rejected State Farm's challenges to Mr. Witt's calculation of damages. *Whitman*, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021). The district court set the case for a jury trial commencing on October 10, 2022, later stating that it would be held by Zoom, with the parties' Joint Pretrial Statement due on September 6, 2022. *Whitman*, Doc. 139.

On May 2, 2022, Plaintiff filed a motion for summary judgment on behalf of the class, arguing that the Policy should be construed to prohibit State Farm's loaded COI Rates; that State Farm should be deemed collaterally estopped from challenging facts found by the *Vogt* jury, leaving no remaining fact disputes as to damages; and that the statute of limitations should be deemed tolled under the discovery rule. *Id.*, Doc. 147. State Farm also filed a motion for summary judgment, arguing the *Bally* court's interpretation of "applicable rate class" along with State

Farm's "assigned-by" interpretation comprised the only reasonable interpretation of the Policy, and State Farm supported its motion with declarations from its insurance industry, consumer expectations, and damages experts. *Id.*, Doc. 154. State Farm also argued that the undisputed facts did not support a claim for conversion or under the WCPA and that the class's claims were barred by the statute of limitations and were not tolled under Washington law by the discovery rule or the fraudulent concealment doctrine. *Id.*

On September 6, 2022, the court entered its order granting State Farm's motion for summary judgment and denying Plaintiff's, and, like the *Bally* court, ruling that the Policy's COI Rates provision unambiguously permitted State Farm to include profit and expense loads in the COI Rates through the Policy's applicable rate class factor. *Whitman*, 2022 WL 4081916, at *4-6 (W.D. Wash. Sept. 6, 2022). Like the *Bally* court, the court also concluded the Eighth Circuit had not considered this theory of policy interpretation. *Id.* at *4. However, unlike *Bally*, the *Whitman* court rejected Plaintiff's interpretation of the Expense Charge provision, concluding instead that the court's interpretation of the COI Rates provision necessarily resolved the proper interpretation of the Expense Charge provision. *Id.* at *7. The court also found Plaintiff's conversion and WCPA claims failed under its interpretation of the Policy. *Id.*

On September 21, 2022, Plaintiff filed a notice of appeal to the Ninth Circuit. *Whitman*, Doc. 199. On October 5, 2022, State Farm filed its notice of conditional cross-appeal as to the court's class certification order. *Id.*, Doc. 202; Ninth Circuit Case Nos. 22-35745, 22-35787. Plaintiff's opening brief on appeal was due November 25, 2022, but the briefing deadlines were stayed upon the parties' notification to the Ninth Circuit's mediation office that they had signed a term sheet to settle the matter.

*Page v. State Farm Life Insurance Co.*

On May 11, 2020, Plaintiff Ronald K. Page, a Form 94030 policy owner whose Policy was issued by State Farm in Texas, filed a class action complaint asserting the same claims on behalf of Texas policy owners as the cases preceding it. Originally filed in the Southern District of Texas, the case was later transferred to the Western District of Texas. *See Page v. State Farm Life Ins. Co.*, 5:20-CV-00945-FB (W.D. Tex.).[9] State Farm filed its Answer to the operative complaint on March 23, 2021, denying liability on all claims and asserting thirty-seven affirmative defenses, including statute of limitations, laches, estoppel, the filed-rate doctrine, voluntary payment, and ratification. *Page v. State Farm Life Ins. Co.*, 5:20-CV-00617-FB (W.D. Tex.), Doc. 76.

On June 15, 2021, Plaintiff filed a motion to certify a class of Texas Form 94030 policy owners as to his breach of contract and conversion claims, which was supported by the expert report of Scott Witt, including Mr. Witt's proposal for a class-wide damages methodology. *Id.*, Doc. 79. After full briefing and two hearings by Zoom to address the pending motions, Magistrate Judge Elizabeth S. Chestney issued on February 10, 2022, a Report and Recommendation to District Judge Fred Biery recommending that Plaintiff's motion for class certification be granted and an Order denying State Farm's motion to exclude Mr. Witt's testimony. *Page*, 584 F. Supp. 3d 200 (W.D. Tex. 2022). On March 10, 2022, the Magistrate Judge further issued a Report and Recommendation recommending that State Farm's motion for summary judgment be denied, except as to Plaintiff's conversion claim. *Page*, 2022 WL 718789 (W.D. Tex. Mar. 10, 2022). As

_____

[9] Plaintiff's case was initially docketed in the Western District of Texas under case number 5:20-CV-00945-FB, but it was later consolidated with a case filed by another Texas Form 94030 policy owner, Anna Gonzalez, at case number 5:20-CV-00617-FB. Ms. Gonzalez later voluntarily dismissed her claims. *See id.*, Doc. 75. Plaintiff Page later filed an amended complaint that included claims for breach of the duty of good faith and fair dealing, violation of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act. *Id.*, Doc. 72.

13

to the interpretation of the Policy, the court disagreed that the Policy unambiguously permitted State Farm to include profit and expense loads in the COI Rates, thus rejecting State Farm's "assigned-by" interpretation and the *Bally* (and later *Whitman*) court's interpretation as the only reasonable way an ordinary policy owner could read the Policy. *Id.* at *5-10. The court also concluded that Plaintiff's interpretation of the Expense Charge provision was reasonable. *Id.* at *11. On the statute of limitations, the court concluded there was evidence supporting a finding that the claims were tolled by the discovery rule and fraudulent concealment doctrine under Texas law, and thus recommended that summary judgment be denied as to the statute of limitations. *Id.* at *15. The court also recommended that summary judgment be denied as to Plaintiff's good faith and fair dealing and statutory claims. *Id.* at *14-15. However, the court concluded Plaintiff's conversion claim was barred by Texas's economic loss doctrine. *Id.* at *12-14.

State Farm filed objections as to the summary judgment and class certification rulings, and Plaintiff filed an objection as to the summary judgment ruling on the conversion claim. *See Page*, Docs. 142, 150, 151. These objections were fully briefed and pending when the parties notified the court that they had signed a term sheet to settle the matter and requested a stay.

### *Jaunich v. State Farm Life Insurance Co.*

On July 13, 2020, Plaintiff John E. Jaunich, a Form 94030 policy owner whose Policy was issued by State Farm in Minnesota, filed a class action complaint in the District of Minnesota asserting the same claims on behalf of Minnesota policy owners as the cases preceding it. *See Jaunich v. State Farm Life Ins. Co.*, No. 20-CV-01567-PAM/JFD (D. Minn.).

On September 14, 2020, State Farm moved to dismiss Plaintiff's conversion and declaratory judgment claims. *Id.*, Doc. 20. After full briefing and a hearing by Zoom, the court granted State Farm's motion. *Id.*, Doc. 40. State Farm filed its Answer on December 16, 2020,

denying liability on Plaintiff's remaining breach of contract claims, and asserting twenty-four affirmative defenses, including statute of limitations, laches, estoppel, ratification, and the filed-rate and voluntary payment doctrines. *Id.*, Doc. 44.

On June 16, 2021, Plaintiff filed a motion to certify a class of Minnesota Form 94030 policy owners supported by the expert report of Scott Witt, including his calculation of class-wide damages. *Id.*, Doc. 51.

After full briefing on the pending motions and a hearing, on November 1, 2021, the court denied State Farm's motion for summary judgment and motion to exclude Mr. Witt's testimony and granted Plaintiff's motion for class certification. *Jaunich*, 569 F. Supp. 3d 912 (D. Minn. 2021). The court rejected the interpretation adopted by the *Bally* and (later) *Whitman* courts as the only reasonable reading of the Policy, and in so doing, concluded the Policy was at a minimum ambiguous given the Eighth Circuit's interpretation of the Policy in *Vogt* and rejected State Farm's reliance on industry experts for its contrary interpretation because "the standard for interpreting an insurance policy is how a reasonable lay person, not an industry expert, would interpret the policy." *Id.* at 916. The court also rejected State Farm's request for summary judgment on the statute of limitations. On November 8, 2021, State Farm requested leave to file a motion for reconsideration of the court's rulings, which the court denied on November 9, 2021. *Jaunich*, Docs. 145, 147. On November 15, 2021, State Farm filed in the Eighth Circuit a petition for permission to appeal the court's class certification order pursuant to Rule 23(f). *See* Eighth Circuit Case No. 21-8009. After full briefing, the Eighth Circuit denied State Farm's petition on December 14, 2021. On February 10, 2022, State Farm again deposed Mr. Witt. Siegel Dec., ¶ 102.

On April 1, 2022, Plaintiff filed a motion for summary judgment in favor of the class, arguing that: the Policy's ambiguity must be construed against State Farm as the drafter; collateral

estoppel prevented State Farm from challenging issues related to the calculation of damages that were resolved by the *Vogt* jury, leaving no material facts in dispute on damages; and there were no facts in dispute and the class was entitled to judgment as a matter of law on equitable tolling under the court's prior summary judgment ruling. *Jaunich*, Docs. 164, 168

After full briefing and a hearing on the pending motions, the court entered its order granting Plaintiff's motion for summary judgment on State Farm's liability for breach of contract, denying Plaintiff's motion as to damages, and denying Plaintiff's motion as to the statute of limitations. *Jaunich*, 2022 WL 2318560 (D. Minn. June 28, 2022). The court held that the Eighth Circuit's conclusion that the COI Rates provision "is at least ambiguous and thus must be construed against State Farm" must govern over the interpretation by the court in *Bally* (and later, *Whitman*). *Id.* at *2. The court also concluded that Plaintiff's interpretation of the Expense Charge provision was reasonable, as it noted that all other courts had likewise concluded (until the later *Whitman* court summary judgment order). *Id.* The court declined, however, to apply collateral estoppel to the *Vogt* jury's damages award. *Id.* at *3. On the statute of limitations, the court concluded that Plaintiff had failed to come forward with evidence that State Farm had fraudulently concealed its conduct to entitle the class to equitable tolling. *Id.* at *4. The court then stated that "Jaunich's Motion is denied as the statute of limitations, and any claim arising before July 2014 is time-barred." *Id.* at *4. The court denied State Farm's motion to exclude Mr. Witt's testimony, noting that "State Farm repeats many of the arguments it raised in its first *Daubert* Motion in this matter, as well as arguments that have failed before other courts." *Id.* The court denied Plaintiff's *Daubert* motion as moot. *Id.*

On October 3, 2022, the parties notified the court that they had signed a term sheet to settle the matter. Siegel Dec., ¶ 109.

*McClure v. State Farm Life Insurance Co.*

On July 13, 2020, Earl E. McClure, a Form 94030 policy owner whose Policy was issued by State Farm in Arizona, filed a class action complaint in the District of Arizona asserting the same claims on behalf of Arizona policy owners as the cases preceding it. *See McClure v. State Farm Life Ins. Co.*, No. CV-20-01389-PHX-SMB (D. Ariz.). State Farm filed its Answer on September 14, 2020, denying liability on all claims and asserting thirty-one affirmative defenses, including statute of limitations, various equitable defenses, and the filed-rate doctrine. *Id.*, Doc. 11; *see also id.*, Doc. 24.

On October 25, 2021, McClure filed a motion to certify a class of Arizona Form 94030 policy owners supported by the expert report of Scott Witt, including his damages methodology and calculations of class-wide damages. *McClure*, Doc. 39. On December 9, 2021, State Farm filed its opposition to the motion for class certification and a motion to strike the expert class certification declaration and testimony of Mr. Witt, along with the expert declarations and reports of Hudson, Reynolds, Kirk Fair, and Stiroh; five declarations from sales agents and a State Farm underwriter, and the declaration of State Farm's Assistant Vice President and actuary Alan Hendren. *McClure*, Docs. 52, 54. On December 10, 2021, State Farm filed its motion for summary judgment, arguing that the court should adopt the assigned-by/applicable rate class interpretation of the Policy, the conversion claim was not properly stated under Arizona law, and the statute of limitations barred the claims. *Id.*, Doc. 74

After full briefing on the pending motions and an in-person hearing, the court both granted the motion for class certification and denied State Farm's motion to strike Mr. Witt's class certification declaration and testimony on April 29, 2022. *McClure*, 341 F.R.D. 242 (D. Ariz. 2022).

On June 23, 2022, the court denied State Farm's motion for summary judgment on the breach of contract claims and on the basis of the statute of limitations and granted the motion as to the conversion claim under Arizona's economic loss doctrine. *McClure*, --- F. Supp. 3d ----, 2022 WL 2275665 (D. Ariz. June 23, 2022). The court ruled that McClure's interpretation of the Policy as limiting State Farm to using the listed mortality factors to determine the COI Rates was reasonable and that the *Bally* (and later, *Whitman*) court's interpretation, while plausible, was not the only reasonable way a layperson could read the Policy. *Id.* at *3-4. The court also rejected State Farm's reliance on expert testimony regarding actuarial and insurance regulatory standards because there was no indication lay policy owners would be aware of these standards in understanding the Policy. *Id.* at *5. The court further concluded that the fact several courts had concluded McClure's reading of the Policy was reasonable and the disagreement on this issue "bolster[ed] the Court's conclusion that the COI language in the Policy is ambiguous." *Id.* at *6.

As to the Expense Charge provision, the court concluded the language was "at best, ambiguous," and agreed with other courts that policy owners could reasonably read the provision "as including all monthly expenses for the Policy" and was the "mostly likely" way a layperson would read the language. *Id.* at *7. The court also denied State Farm's motion as to the statute of limitations, concluding there was at least a dispute of fact as to whether the claims were discoverable pursuant to Arizona's discovery rule. *Id.* at *9.

On July 18, 2022, McClure filed a motion for partial summary judgment in favor of the Arizona class on State Farm's liability for breach of the Policy's COI Rates and Expense Charge provisions and on the statute of limitations. *McClure*, Doc. 108. After full briefing, the motion was set for in person oral argument to be held on November 2, 2022. *Id.*, Doc. 115. Following the judgment in *Whitman,* State Farm subsequently moved for reconsideration of the *McClure* court's

summary judgment order and policy interpretation. The court ordered plaintiff to respond and indicated it would hear argument on November 2. Doc. 117. On September 29, 2022, upon the parties notifying the court of the Settlement, the court vacated a trial setting conference set for September 30, 2022, and the oral argument on summary judgment set for November 2, 2022. *Id.*, Doc. 125.

Mr. McClure died on October 2, 2022. Siegel Dec., ¶ 133. His wife, the nominated personal representative of his estate, is proceeding on behalf of the estate to effectuate this settlement. *See* McClure Dec. (Ex. 6). A motion to continue the stay currently in place in *McClure* was submitted to the court on November 21, 2022. *McClure,* Doc. 126

### *Singh v. State Farm Life Insurance Co.*

On February 4, 2021, Plaintiff Chandra B. Singh, a Form 94030 policy owner whose Policy was issued by State Farm in Oregon, filed a class action complaint in the District of Oregon asserting the same claims on behalf of Oregon policy owners as in the cases preceding it. *See Singh v. State Farm Life Ins. Co.*, No. 3:21-CV-00190-AR (D. Ore.), Doc. 1. On April 12, 2021, State Farm filed its Answer, denying liability on all claims and asserting thirty-three affirmative defenses, including statute of limitations, several equitable defenses, and the filed-rate doctrine. *Id.*, Doc. 10.

On January 27, 2022, Plaintiff filed a motion to certify a class of Oregon Form 94030 policy owners supported by the expert declaration of Scott Witt, including a damages methodology and his calculation of class-wide damages. *Singh*, Doc. 30. On March 12, 2022, State Farm filed its opposition to Plaintiff's motion for class certification and a motion to exclude the class certification declaration and testimony of Mr. Witt, along with the declarations and reports of its insurance industry, consumer expectations, and damages experts, several declarations from sales

agents and a State Farm underwriter, and the declaration of State Farm's Assistant Vice President and actuary Alan Hendren. *Id.*, Docs. 43, 44. These motions were fully briefed and pending when the parties notified the court that they had agreed to a term sheet to settle the matter.

### Toms v. State Farm Life Insurance Co.

On March 26, 2021, Plaintiff David Toms, a Form 94030 policy owner whose Policy was issued by State Farm in Florida, filed a class action complaint in the Middle District of Florida asserting the same claims on behalf of Florida policy owners as in the cases preceding it. *See Toms v. State Farm Life Ins. Co.*, No. 8:21-CV-00736-KKM-JSS (M.D. Fla.).[10] On May 26, 2021, State Farm filed its Answer, denying liability on all claims and asserting forty-two affirmative defenses, including statute of limitations, various equitable defenses, and the filed-rate doctrine. *Id.*, Doc. 21.

On October 28, 2021, State Farm filed a motion for judgment on the pleadings as to Plaintiff's conversion and declaratory judgment claims. *Toms*, Doc. 49. On January 28, 2022, Plaintiff filed his motion to certify a class of Florida Form 94030 policy owners supported by the expert report of Scott Witt regarding his methodology and calculation of class-wide damages. *Toms*, Doc. 60. On July 14, 2022, the court granted State Farm's motion for judgment on the pleadings as to Plaintiff's conversion and declaratory judgment claims. *Id.*, Doc. 116.

On September 26, 2022, the court entered its order granting Plaintiff's motion for class certification and denying State Farm's motion to exclude the testimony of Mr. Witt. *Toms*, 2022 WL 5238841 (M.D. Fla. Sept. 26, 2022). With dispositive motions due on October 7, 2022, and

---

[10] Proceeding through different counsel, another Florida Form 94030 policy owner filed a putative class action complaint on December 4, 2019, *see Lech v. State Farm Life Ins. Co.*, No. 8:19-CV-02983-MSS (M.D. Fla.), which was voluntarily dismissed with prejudice on July 27, 2021. *See id.*, Doc. 76.

the case set for trial in April 2023, the court stayed the deadlines upon the parties' notification that they had signed a term sheet to settle the litigation. *See Toms*, Doc. 132.

### Bauer v. State Farm Life Insurance Co.

On January 29, 2021, Plaintiff Kathy Bauer, a Form 94030 policy owner whose Policy was issued by State Farm in Georgia, filed a class action complaint in the Northern District of Georgia asserting claims on behalf of Georgia policy owners for breach of contract for State Farm's use of unlisted factors to determine the COI Rates and for not reducing the COI Charges to reflect decreasing mortality rates, breach of the covenant of good faith and fair dealing, conversion, fraud, and declaratory relief. *See Bauer v. State Farm Life Ins. Co.*, No. 1:21-CV-00464-SDG (N.D. Ga.).

On May 28, 2021, Plaintiff filed a First Amended Complaint asserting the same claims as the cases preceding Plaintiff Bauer's. *Id.*, Doc. 35. On July 12, 2021, State Farm filed a motion to dismiss Plaintiff's conversion and declaratory relief claims and to strike Plaintiff's request for punitive damages. *Id.*, Doc. 39.

After full briefing, on March 28, 2022, the court granted State Farm's motion for partial dismissal. *Id.*, Doc. 53. On April 11, 2022, State Farm filed its Answer, denying liability on the remaining claims and asserting thirty-six affirmative defenses, including statute of limitations, several equitable defenses, and the filed-rate doctrine. *Id.*, Doc. 54. Under the scheduling order, Plaintiff's motion for class certification was due December 16, 2022. *Id.*, Doc. 66. The court stayed all deadlines upon the parties' notification to the court that they had reached a settlement. A formal motion to stay pending this Court's consideration of the settlement was filed on November 21, 2022. *Id.*, Doc. 71.

*Botte v. State Farm Life and Accident Assurance Co.*

On May 16, 2022, proceeding through different counsel, Plaintiff Kim Botte, a Form A94030 policy owner whose Policy was issued by State Farm in New York, filed a class action complaint in the Eastern District of New York asserting that State Farm breached the Policy's Expense Charge provision by including expenses in the COI Rates, a claim for declaratory and injunctive relief, and a claim under the New York Deceptive Trade Practices Act, New York Gen. Bus. Law § 349, *et seq*., on behalf of New York policy owners. *See Botte v. State Farm Life Ins. Co.*, No. 2:22-cv-02842-JMA-JMW (E.D.N.Y.), Doc. 1. State Farm indicated it intended to move to dismiss the case against State Farm Life Insurance Company because a different State Farm entity, State Farm Life and Accident Assurance Company, issued Form A94030 in New York. On August 15, 2022, now with the undersigned counsel, Plaintiff filed an Amended Complaint against State Farm Life and Accident Assurance Company asserting the same claims as the cases preceding Plaintiff Botte's, in addition to a claim under the New York Deceptive Trade Practices Act. *Id*., Doc. 39.

On August 29, 2022, State Farm requested a pre-motion conference regarding an anticipated motion to dismiss asserting the statute of limitations largely barred Plaintiff's claims and that Plaintiff's claims for declaratory relief and conversion should be dismissed because they merely duplicated the contract claims. *Id.*, Doc. 40. On September 2, 2022, Plaintiff filed a response letter arguing that Plaintiff had plausibly alleged facts showing Plaintiff's claims were equitably tolled under New York law and that Plaintiff's other claims were properly pleaded. *Id.*, Doc. 41. On September 15, 2022, both parties served interrogatories and document requests. Siegel Dec., ¶ 176. On October 25, 2022, in response to State Farm's pre-letter request (*Botte,* Doc. 40) to file a motion to dismiss, the court permitted plaintiff to amend his complaint and denied the

22

request to hear a motion to dismiss without prejudice. On November 22, 2022, the parties filed a motion to stay the settlement pending this Court's consideration of it. *Id.*, Doc. 43.

### *Rogowski v. State Farm Life Ins. Co. & State Farm Life and Accident Assurance Co.*

On March 25, 2022, Plaintiffs David Rogowski and Joyce Thomas, filed a class action complaint in this Court on behalf of themselves and all Missouri policy owners who had continued to suffer alleged COI overcharges since the *Vogt* judgment, asserting claims for breach of contract, conversion, and declaratory and injunctive relief. *Rogowski v. State Farm Life Ins. Co.*, No. 4:22-CV-00203-RK (W.D. Mo.), Doc. 1. On May 31, 2022, State Farm filed its Answer denying liability on all claims and asserting twenty-two affirmative defenses, including various equitable defenses and res judicata. *Id.*, Doc. 8. On June 7, 2022, Plaintiffs filed an amended complaint to assert their claims on behalf of all Form 94030 policy owners whose policies were issued in any state except those for which a case was already pending. *Id.*, Doc. 11. On July 28, 2022, State Farm filed a motion to dismiss for lack of jurisdiction and failure to state a claim or in the alternative to strike the class allegations in part. *Id.*, Doc. 28. Following the completion of briefing, the Court denied the motion. *Id.*, Doc. 40.

On November 22, 2022, for the purpose of effectuating the Settlement, Plaintiffs Rogowski, Bally, Bauer, Botte, Jaunich, Mylene McClure as personal representative of the Estate of Earl L. McClure, Page, Singh, Thomas, Toms, and Whitman filed before this Court a Second Amended Class Action Complaint against both State Farm entities on behalf of themselves and a nationwide class of policy owners of Forms 94030/A94030 and 94080.

### C.    Settlement Negotiations

The Parties participated in three separate full-day mediation sessions on June 21, 2022, August 10, 2022, and September 27, 2022, with the assistance of two highly respected, experienced, neutral mediators. During the first two sessions, the Parties mediated with the

Honorable John Bonner, retired U.S. District Judge. The third session was overseen by the Honorable Layn Phillips, retired U.S. District Judge. During the September 27, 2022, session, the Parties were successful in reaching agreement on the material terms of the Settlement Agreement now submitted for approval. Siegel Dec., ¶ 190. Prior to these mediation sessions, State Farm had never offered to settle the litigation, even in part. *Id.*, ¶¶ 190-91.

Throughout the process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. Plaintiffs' counsel was well informed of the material facts and legal risks and the negotiations were hard-fought and non-collusive. Having litigated the various legal and factual issues over more than six years, including two cases to judgment and one through the entire appellate process twice, Plaintiffs' counsel was well-positioned to evaluate State Farm's positions and the risks facing the Settlement Class Members, advocated in the settlement negotiation process for a fair and reasonable Settlement that serves the best interests of the Settlement Class, and made fair and reasonable settlement demands of State Farm. *Id.* ¶ 191.

## III.   SUMMARY OF THE SETTLEMENT

The Agreement represents a compromise between Plaintiffs and the proposed Settlement Class and State Farm regarding the claims pled in the Second Amended Class Action Complaint. If the Settlement is finally approved, State Farm will fund a non-reversionary cash Settlement Fund in the amount of $325,000,000. Agreement, ¶¶ 1.38, 2.1. Under the Agreement, Class Counsel will move for an attorneys' fee award to be paid from the Settlement Fund not to exceed one-third of the Settlement Fund and reimbursement of expenses from the Settlement Fund not to exceed $1,500,000. *Id.* ¶ 8.1. Class Counsel will also move for Service Awards for the Plaintiffs to be paid from the Settlement Fund in an amount not to exceed $25,000 each. *Id.* ¶ 8.2. The Settlement Fund will also cover the fees and expenses of the Settlement Administrator. *Id.* ¶¶ 1.19, 1.34, 1.38.

24

There is no "claims process." Each Settlement Class Member will receive their share of the Net Settlement Fund pursuant to a distribution plan developed by Class Counsel and approved by the Court. *Id.* ¶¶ 2.2-2.3.[11] In exchange for these benefits, the Parties will seek the entry of judgment on the claims asserted in this case and Settlement Class Members agree to release all claims arising out of the facts asserted in this case. *Id.* ¶¶ 3.1-3.7.

The Agreement allocates the value of the Settlement Fund across the Settlement Class pursuant to an objective distribution plan that is designed to provide each Settlement Class Member a minimum payment of $10 plus an approximate pro rata portion of the Net Settlement Fund according to the amount of Monthly Deductions for COI Charges and Expense Charges paid by each Settlement Class Member,[12] with equitable adjustments for current policy owners and Settlement Class Members who already received a share of the *Vogt* judgment. *See* Witt Dec., & Ex. B.

The Agreement permits any Settlement Class Member to file an objection to the Settlement terms or opt-out of the Settlement Class within 35 days after the date the Notice is mailed. *Id.* ¶¶ 5.1, 5.4.

---

[11] Although the Settlement is designed to distribute 100% of the Settlement Fund, where any Settlement Class Members do not cash their checks within 180 days of issuance, such checks will be cancelled, and the check amounts sent to the unclaimed property division of the state in which each such Settlement Class Member was last sent Notice, unless otherwise ordered by the Court. However, checks shall be re-issued by the Settlement Administrator if requests to do so are received from Settlement Class Members prior to the date when the transfer to the unclaimed property divisions has occurred. Agreement, ¶ 2.4.

[12] Because Settlement Class Members who were a part of the *Vogt* class have already received a share of that judgment, their settlement share will be calculated using charges deducted after the cutoff date for the calculation of damages in the *Vogt* judgment. *See* Ex. 3 (Witt Dec.), & Ex. 3.B.

## IV. THE SETTLEMENT CLASS

The proposed Settlement Class includes the persons or entities who own or owned one or more of approximately 760,000 Policies issued or administered by State Farm or its predecessors in interest on Form 94030/A94030 or Form 94080. The Settlement Class is made up of the Owners of the Policies on the Class List.[13] *Id.* ¶¶ 1.6, 1.27, 1.36.

## V. ISSUING NOTICE TO THE SETTLEMENT CLASS IS JUSTIFIED.

### A. Standard for Issuance of Notice.

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). The first step in the approval process is the Court's evaluation of whether directing notice of the proposed settlement to the settlement class is justified. Notice should issue if the parties have demonstrated to the court that it will likely be able to: (i) approve the proposed settlement under Rule 23(e)(2) as fair, reasonable, and adequate; and (ii) certify the class for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e)(1)-(2).

In determining whether a proposed settlement should be approved as fair, reasonable, and adequate, courts in the Eighth Circuit consider the factors set forth in the 2018 amendment to Federal Rule of Civil Procedure 23(e)(2) as well as those commonly known as the "*Van Horn* factors" from the Eighth Circuit opinion, *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). *See Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG, 2020 WL 12604383, at *2 (W.D. Mo. Sept. 4, 2020) (citing *Van Horn*, 840 F.2d at 607; *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2020 WL 1862470, at *5 (S.D. Iowa Apr. 14, 2020) (holding that it is

---

[13] The Settlement Class excludes State Farm; any entity in which State Farm has a controlling interest; any of the officers or board of directors of State Farm and their immediate family; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiffs' counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family. Agreement, ¶ 1.36.

"appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors.");

*In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 7160380, at

*1 (W.D. Mo. Nov. 18, 2019)); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018

amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-

law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and

substance that should guide the decision whether to approve the proposal.").

The factors identified in Federal Rule of Civil Procedure 23(e)(2) are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The four *Van Horn* factors are: (1) the merits of the plaintiffs' case

weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the

complexity and expense of further litigation; and (4) the amount of opposition to the settlement.

*Van Horn*, 840 F.2d at 607. "No one factor is determinative, but the 'most important factor in

determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of

the plaintiff's case against the terms of the settlement.'" *Holt*, 2020 WL 12604383, at *2 (quoting

*Van Horn*, 840 F.3d at 607).

**B.** **The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Factors Identified in Rule 23(e) and *Van Horn*.**

As demonstrated below, the proposed Settlement is fair, reasonable, and adequate under the factors identified in Rule 23(e) and by the Eighth Circuit in *Van Horn* such that the Court should conclude it will likely be able to approve the Settlement, and therefore, that issuing Notice to the Settlement Class is justified.

**1.** **The Class Representatives and Class Counsel Have Provided Excellent Representation to the Class.[14]**

The adequacy of representation factor supports finding that the Settlement is fair, reasonable, and adequate and thus that Notice to the Settlement Class should issue. First, the Plaintiffs have shown their dedication to representing the Settlement Class, each providing information and documents, and many sitting for depositions, in connection with this litigation. Each Plaintiff has worked with counsel to advance the litigation on behalf of themselves and all members of the proposed Settlement Class, and each supports the Settlement and advocates for its approval.

Second, the undersigned counsel are competent, experienced and qualified with expertise in class actions and cost of insurance cases on this and other life insurance policies and have vigorously prosecuted the claims asserted in this case. Plaintiffs' counsel have been appointed as class counsel in dozens of class actions throughout the country, including the *Vogt* case that commenced this litigation, as well as the several cases against State Farm that followed *Vogt*,[15] and have significant experience handling complex disputes, including lawsuits involving other life insurance contracts. *See* Siegel Dec., ¶¶ 5-8, 193 & Ex. A; Ex. 4 (Schirger Dec.), ¶ 14. For example,

---

[14] *See* Fed. R. Civ. P. 23(e)(2)(A).

[15] *See Bally*, 335 F.R.D. at 303; *Whitman*, 2021 WL 4264271, at *4; *Page*, 584 F. Supp. 3d at 220; *McClure*, 341 F.R.D. at 251; *Toms*, 2022 WL 5238841, at *8.

in June 2018, Stueve Siegel and Miller Schirger successfully tried the *Vogt* case, securing a jury verdict of $34,333,495.81 for Missouri policy owners, which was affirmed on appeal. *See Vogt*, Doc. 358 & 360, *aff'd*, 963 F.3d 753 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (Apr. 19, 2021). In 2021, the undersigned counsel settled a similar case against USAA Life Insurance Company, obtaining $90 million for a class of universal life insurance policy owners. *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021), and in 2018, the undersigned counsel settled a similar case against John Hancock Life Insurance Company, obtaining $59.75 million for a class of whole life insurance policy owners. *See Larson v. John Hancock Life Ins. Co*., No. RG16813803 (Alameda Cty., Cal.). In 2016, counsel settled another similar case against Lincoln National Life Insurance Company, obtaining $2.25 billion of guaranteed term life insurance with a market value of approximately $171.8 million for a class of universal life policy owners. *See Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Cty., Ind.).

Counsel's depth of knowledge and experience gained through the litigation here and cases challenging cost of insurance provisions in other similar life insurance policies allowed them to accurately evaluate and weigh the risks of continued litigation to reach a fair settlement of the claims asserted in this litigation, which Plaintiffs' counsel believe to be in the best interests of Plaintiffs and the Settlement Class. Siegel Dec., ¶ 5-8, 193; Schirger Dec., ¶¶ 14, 19. This factor thus supports finding that the Settlement is fair, reasonable, and adequate, that it will likely be approved, and therefore justifies issuing Notice of the Settlement to the Settlement Class. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (stating class counsel's "experience in this type of litigation" supports providing deference to their views as to the fairness of the settlement).

## 2.    The Settlement Is the Product of Arm's Length Negotiations.[16]

The extent and scope of litigation confirms that the Settlement is the product of arm's length negotiations. And, as explained in Part II.C., *supra*, the proposed Settlement is the product of significant negotiation by experienced counsel on both sides with the assistance of two experienced, well-respected neutral mediators, culminating in the execution of the Agreement attached hereto as Exhibit 1. Siegel Dec., ¶¶ 190-91. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair, reasonable, and adequate and will likely be approved such that issuing Notice to the Settlement Class is justified. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Vill. Bank v. Caribou Coffee Co., Inc.*, No. 19-CV-1640 (JNE/HB), 2020 WL 13558808, at *2 (D. Minn. July 24, 2020) (finding that "[t]he assistance of a retired United States Magistrate Judge as a mediator in the settlement process supports the conclusion that the Settlement was non-collusive and fairly negotiated at arm's length"); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (finding the proposed settlement's fairness was supported by the fact that it was reached "after significant investigation and extensive arm's-length negotiations"). Accordingly, this factor supports issuing Notice of the Settlement to the Settlement Class.

---

[16] *See* Fed. R. Civ. P. 23(e)(2)(B).

### 3. The Relief Provided by the Settlement Is Excellent.[17]

#### a. The duration, costs, risks, and delay of trial and appeal support approval of the Settlement.[18]

The $325,000,000 cash settlement is an excellent result for the Settlement Class and likely reflects the largest cash settlement in any litigation involving how an insurance company sets their cost of insurance charge. The size of the fund represents almost 100 percent of the claimed damages for the Settlement Class under the damages methodology set forth by Plaintiffs' expert for Count II; and, it represents a material portion of the damages set forth by that expert under Count I. The result is even more impressive in light of the duration, costs, risks, and delay of trial and appeal, which supports a finding that the Court will likely be able to approve the Settlement, and thus, that Notice should issue to the Settlement Class. In the absence of the Settlement, the Settlement Class Members face significant risks, costs, and delay in reaching a litigated judgment in their favor. As explained in Part II.B, *supra*, courts have reached various readings of the relevant policy language, and it is unknown if, going forward, courts will coalesce around a reading in favor of the policy owners or State Farm or whether they will coalesce at all. It has been difficult to predict the outcome, even among courts in the same Circuit, as evidenced by the adverse statute-of-limitations ruling in *Jaunich* and the conflicting opinions in *Bally*, *McClure*, and *Whitman*. Absent settlement, the issue of policy interpretation would soon be before the Ninth Circuit, with State Farm urging application of the Seventh Circuit's interpretation in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1146 (7th Cir. 2013) and the Eleventh Circuit's interpretation in *Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*, 853 F. App'x 451 (11th Cir. 2021) to construe

---

[17] Fed. R. Civ. P. 23(e)(C).

[18] Fed. R. Civ. P. 23(e)(2)(C)(i). Plaintiffs also address herein *Van Horn* factors 1 and 3: "the merits of the plaintiffs' case weighed against the terms of the settlement," and "the complexity and expense of further litigation." *Van Horn*, 840 F.2d at 607.

the Policy as authorizing State Farm to use unlisted, non-mortality factors to determine the Policy's COI Rates. State Farm has, at least as to the *Bally* and *Whitman* courts, successfully argued that the Eighth Circuit's opinion in *Vogt* should not be followed because it did not consider the interpretation adopted by these district courts. Consequently, there remains a significant risk that the class could recovery nothing through further litigation.

Further, State Farm has consistently and forcefully argued that Plaintiffs' expert's damages calculations are unreliable, cannot be used to prove damages class-wide, and should be rejected by a jury. Since suffering the adverse judgment in *Vogt*, State Farm's defenses have evolved, and State Farm has disclosed four entirely different experts in these cases, including experts on consumer behavior, actuarial science and pricing, and insurance regulation. None of these experts have been tested at trial; and, to date, none of the courts presiding over these cases have excluded the testimony of any State Farm experts.

State Farm's new economist, Dr. Lauren Stiroh, also offered multiple damage-reducing opinions, including opinions that, if accepted, would reduce Count I damages by approximately 4 percent based on State Farm's "crossover" defense (which the *Vogt* jury accepted); 22 percent based on State Farm's "pooled rates" defense; and 18 percent based on State Farm's defense that it would not have credited interest above the minimum rate if it could not include profits and expenses in its COI Charge. Collectively, these opinions, if they had been accepted by a jury, would have reduced overall damages by approximately 44 percent even in cases where Plaintiffs prevailed on the issue of policy-interpretation and liability. Dr. Stiroh also opines that no policyowner suffered economic harm at all; and, therefore, no class member had damages in the "but for" world where State Farm did not breach the Policy. Thus, even if Plaintiffs had prevailed on liability, they faced significant risk at trial of a zero-dollar or damages award by a jury of a

significantly reduced amount. Except for the crossover and pooled-rate defenses, these other arguments were not tested in *Vogt*.

For these reasons, even if the Settlement Class Members were to prevail on their interpretation of the policy language, thereby establishing State Farm's liability for breach, there is significant uncertainty as to the damages that would be recovered at trial, particularly where State Farm has challenged Plaintiffs' claims as barred or substantially limited by the statute of limitations, requiring Plaintiffs to prevail on establishing that the statute of limitations was tolled to recover. Proving the Plaintiffs' claims through trial would thus be a lengthy, costly, and uncertain process. *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) ("Class actions, in general, place an enormous burden of costs and expense upon parties. Here, the application of numerous states' laws made this a particularly complex case.") (quotations omitted); *In re Zurn Pex Plumbing Products Liab. Litig.*, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013) (recognizing that "[t]he complexity and expense of class action litigation is well-recognized" and that "various procedural and substantive defenses . . ., the expense of proving class members' claims, the certainty that resolution under [a] settlement will foreclose any subsequent appeals, and the fear that, unsettled, the ultimate resolution of the action . . . could well extend into the distant future, all weigh in favor of the settlement's approval."). In contrast, a settlement that provides nearly full damages under Count II and a material portion of damages under Count I is a significant portion of the alleged damages and an excellent result.

Finally, State Farm—which has retained several lawyers from multiple large, well-respected, and resourced law firms—has demonstrated it will challenge Plaintiffs' claims to the highest appellate levels, as it did in *Vogt*, where it sought rehearing by the Eighth Circuit panel and en banc review, moved to recall that Court's mandate, and petitioned for certiorari to the

33

United States Supreme Court, before ultimately paying the judgment. As it litigated its various challenges to the maximum extent possible, the class members in *Vogt*, who prevailed at trial in June 2018, were not paid until 2022. Siegel Dec., ¶ 30. Thus, even if Plaintiffs were to prevail on all issues in their respective cases, an uncertain proposition that itself would take considerable time for the reasons explained above, they would likely not obtain their due recovery for years. This delay further supports a finding that the Settlement, which provides certain recovery in the near-term in an amount representing a material portion of the damages that Settlement Class Members could have obtained had they prevailed in full on the merits of their claims, and more than they could have recovered if State Farm prevailed on any one of its challenges or defenses, is a fair, reasonable, and adequate result, and should therefore ultimately be approved. *See, e.g.*, *Kelly*, 277 F.R.D. at 570 (finding the "significant risks" the settlement class members faced in adjudicating their claims; the uncertain "possibility of a large monetary recovery through future litigation" which "would occur only after considerable additional delay;" the "long and costly" litigation ahead where the defendant "has capable counsel at its disposal and intended to challenge nearly every aspect of Settlement Class Members' case;" and because even if the settlement class members were "to receive a favorable trial verdict, they still would have faced costly and lengthy appeals, delaying the receipt of benefits," all supported approving the settlement); *Keil*, 862 F.3d at 696 ("As courts routinely recognize, 'a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.'") (quoting *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002); citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), *abrogated on*

*other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49-50 (2d Cir. 2000)); *Marshall v. Nat'l Football League*, 787 F.3d 502, 515 (8th Cir. 2015) ("We have repeatedly rejected arguments that compromise was unnecessary because the party would have prevailed at trial.") (quotations omitted). Therefore, "[w]eighing the uncertainty of relief against the immediate benefit provided in the settlement" supports approval here. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005).

Thus, "[t]he single most important factor" in evaluating the Settlement—"the merits of the plaintiffs' case weighed against the terms of the settlement," *Van Horn*, 840 F.2d at 607, as well as the "the complexity and expense of further litigation," *id.*, and "the duration, costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), support approval of the Settlement. Therefore, the Court should conclude that issuing Notice to the Settlement Class is justified.

### b. The effectiveness of the proposed method of distributing relief to the Settlement Class supports approval of the Settlement.[19]

Subject to Court approval, the Net Settlement Fund will be distributed pursuant to a proposed distribution formula that will provide each Settlement Class Member a minimum payment of $10[20] plus an approximate pro rata portion of the fund according to the amount of Monthly Deductions for COI Charges and Expense Charges paid by the Settlement Class Member, with an equitable discount applied to Missouri policy owners and an upward adjustment for current owners. *See* Agreement, ¶ 2.2; Witt Dec., ¶ 13 & Ex. A to Ex. 3. Settlement checks will be delivered to each Settlement Class Member without the submission of a claim. Agreement, ¶ 2.3. That each Settlement Class Member is receiving an equitable portion of the Settlement Fund

---

[19] Fed. R. Civ. P. 23(e)(2)(C)(ii).

[20] This minimum amount addresses the few policies that terminated shortly after issuance. Policies held for any appreciable length of time will receive well in excess of the minimum.

according to the proportional amount of Monthly Deductions for COI Charges and Expense Charges paid (and, therefore, an amount proportional to the alleged loss suffered) without needing to submit a claim supports approval of the Settlement. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable."); 4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.) (stating a class settlement distribution method should be "in as simple and expedient a manner as possible"). Given the simplified process for paying each Settlement Class Member and the fact that no funds will revert to State Farm, this factor weighs in favor of approval.

### c. The terms for the award of attorneys' fees, including the timing of payment, support approval of the Settlement.[21]

Class Counsel will seek their fee as a percentage of the $325,000,000 Settlement Fund created for the Settlement Class. Agreement, ¶ 8.1. Class Counsel will file their fee motion 21 days before the deadline for Settlement Class Members to file objections or to exclude themselves from the Settlement.

The Agreement's provision for an attorneys' fee award paid from the Settlement Fund is fair and reasonable under the common fund doctrine. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321-NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015 (Under the "common fund" doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees "'equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.'") (quoting *Johnston v. Comerica*

---

[21] Fed. R. Civ. P. 23(e)(2)(C)(iii).

*Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996)); *see also* Fed. R. Civ. P. 23(h) (permitting the court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement").

In addition, the Agreement's provision for an award of up to one-third of the fund is reasonable. District courts in the Eighth Circuit frequently assess the reasonableness of an attorney fee award paid from a common fund by the percentage sought, *West v. PSS World Med., Inc.*, No. 4:13 CV 574 CDP, 2014 WL 1648741, at *1 (E.D. Mo. April 24, 2014) ("where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees") (citations omitted), and frequently approve awards of one-third as reasonable, particularly under facts like those here, involving extensive litigation undertaken with significant contingent risk.[22] Accordingly, the

---

[22] *See, e.g.*, *Vogt*, 2021 WL 247958, at *3 (W.D. Mo. Jan. 25, 2021) (awarding one-third of approximately $40 million common fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% fee award reasonable); *Barfield*, 2015 WL 3460346, at *4 (one-third fee and expense award of $6,500,000 is a reasonable); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1110 (D. Kan. 2018) (one-third of $1.51 billion common fund was reasonable); *In re: Urethane Antitrust Litig.*., No. 04-1616-JWL, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (a "one-third fee is customary in contingent-fee cases" and awarding one third of $835 million common fund); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *16 (S.D. Ill. Dec. 16, 2018) (awarding one-third of $250 million common fund); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873, at *4 (D. Kan. July 11, 2022) (awarding "one-third of the $264 million" common fund); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798, at *3 (D. Kan. Nov. 17, 2021), judgment entered, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369815 (D. Kan. Nov. 17, 2021) (awarding "one-third of the $345 million" fund); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061–62, 1067 (D. Minn. 2010)) (awarding one-third of $16 million settlement fund, plus separate reimbursement from the fund of $245,000 in expenses); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% fee award reasonable); *In re E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (awarding 33.3% of a $20 million settlement); *KK Motors v. Brunswick Corp.*, No. 98-2307, Doc. 67, pp. 2–3 (D. Minn. March 6, 2000) (awarding one-third of a $30 million settlement); *In re Airline Ticket Commission Antitrust Litig.*, 953 F. Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86.9 million fund); *In re Iowa Ready–Mix Concrete Antitrust Litig.*, No. C 10-4038-

---

Agreement's provision for an award of up to one-third of the fund is within the range generally deemed reasonable.

Class Counsel will provide a thorough analysis of the reasonableness of their forthcoming attorneys' fee and expense award request in their fee motion. But importantly, the Parties' Agreement is not conditioned upon the Court's approval of the fee award. Agreement, ¶ 8.4. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending Notice to the Settlement Class, without regard to the issue of attorneys' fees and expenses.[23]

> **d.** **There is no agreement required to be identified under Rule 23(e)(3).[24]**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any

---

MWB, 2011 WL 5547159, at *3-4 (N.D. Iowa Nov. 9, 2011) (awarding attorneys 36.04% of $18.5 million common fund in fees, plus separate reimbursement from settlement fund of over $900,000 in expenses); *West*, 2014 WL 1648741, at *1 (33%); *Wiles v. Sw. Bill Tel. Co.*, No. 09-4236-CV-C-NKL, 2011 WL 2416291, at *5 (W.D. Mo. June 9, 2011) (awarding attorneys one-third of $900,000 common fund); *Ray v. Lundstrom*, No. 8:10CV199, 2012 WL 5458425, at *4-5 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million fund in fees, plus separate reimbursement from the settlement fund of $77,900 in expenses); *Brehm v. Engle*, No. 8:07CV254, 2011 U.S. Dist. LEXIS 35127, at *6 (D. Neb. Mar. 30, 2011) (awarding one-third of $340,000 settlement fund in fees, plus separate reimbursement from the fund of $45,000 in expenses); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (S.D. Iowa 2011) (awarding 33% of the settlement award in fees); *see also In re Xcel*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) (listing various settlements, including *In re Select Comfort Corp. Secs. Litig.*, No. 99-884, 2003 U.S. Dist. LEXIS 26409 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $5,750,000 settlement), and *In re Control Data Sec. Litig.*, No. 85-1341 (D. Minn. Sept. 23, 1994) (awarding 36.96% of $8 million fund)); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) (awarding 1/3 of $55 million fund).

[23] Similarly, Class Counsel will request a Service Award of up to $25,000 for each Plaintiff in their forthcoming motion. Agreement, ¶ 8.2. Service awards of this size have been found reasonable. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 961–62 (8th Cir. 2017) (approving $25,000 incentive awards). In addition, the Parties' Agreement is not conditioned on the Court's approval of this request. Agreement, ¶ 8.4.

[24] Fed. R. Civ. P. 23(e)(2)(C)(iv).

agreement made in connection with the proposal." There is no agreement between the Parties here, except those set forth or explicitly referenced in the Settlement Agreement. Accordingly, this factor is not relevant to whether the Settlement is likely to be approved.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement.[25]

The Settlement's proposed distribution formula determines each Settlement Class Member's recovery under the Settlement according to the actual deductions each paid under their Policy for COI and Expense Charges. There is an upward adjustment proposed for current policy owners to reflect that they are still paying COI Charges and, for the Missouri policy owners, their share of the settlement will be calculated using COI and Expense Charges incurred after the damages period in *Vogt* because they have already received a share of the *Vogt* judgment to reflect damages incurred in the earlier period.

### 5. State Farm's Financial Condition.[26]

State Farm has shown both its willingness and financial ability to litigate this case to the greatest extent possible and use every procedural and legal challenge available to it, and also is able to comply with its financial obligations under the Settlement. Plaintiffs thus submit that this factor is neutral. *See Marshall*, 787 F.3d at 512 (finding this factor neutral where defendant was "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation"); *Keil*, 862 F.3d at 697–98 (affirming finding that the defendant's financial condition factor was neutral where "[t]here is no evidence in the record calling [defendant's] financial condition into question," and the defendant had already funded the settlement).

---

[25] *See* Fed. R. Civ. P. 23(e)(2)(D).
[26] *Van Horn*, 840 F.2d at 607 (factor 2).

### 6. The Amount of Opposition to the Settlement Supports Approval.[27]

As explained above, Plaintiffs and Class Counsel believe the Settlement is an excellent result for the Settlement Class, especially given the risks and delay of continued litigation, as detailed above. Siegel Dec., ¶¶ 191, 197; *see Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (recognizing that when evaluating a settlement, the court should accord "deference to the attorneys in assessing their clients' claims/defenses"); *DeBoer*, 64 F.3d at 1178 (stating class counsel's "experience in this type of litigation" supports providing deference to their views as to the fairness of the settlement). Here, Class Counsel's experience litigating the cases in this litigation and similar ones has provided them a thorough understanding of the risks and potential ranges of recovery in this case, which has allowed Class Counsel to fairly consider the merits of the claims here and the value of the Settlement to the Settlement Class. In addition, Plaintiffs also support and approve the Settlement, believing it to be in the best interests of the Settlement Class. Siegel Dec., ¶ 199.

While the Settlement Class Members have not yet had the opportunity to provide their views on the proposed Settlement, Class Counsel believe it will be well received, and any objections thereto will be provided to the Court and addressed in advance of the Fairness Hearing. Accordingly, this factor supports issuing Notice of the Settlement to the Settlement Class.

\*       \*       \*

Accordingly, the Rule 23(e) and Eighth Circuit *Van Horn* factors support a finding that the Court will likely be able to approve the Settlement, and that therefore, Notice of the Settlement should issue to the Settlement Class.

---

[27] *Van Horn*, 840 F.2d at 607 (factor 4).

## VI. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION FOR PURPOSES OF SETTLEMENT.

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed settlement. Here, the Court is not being asked to evaluate certification in a vacuum. Every court to consider whether the facts of this case support class certification under Rule 23, including the Eighth Circuit Court of Appeals in *Vogt*, have concluded that the requirements for certification are satisfied, and because the Court need not consider the manageability issues at trial resulting from the application of multiple states' laws, the Court should conclude that it will likely be able to certify the Settlement Class.

### A. Standard for Certifying Settlement Class.

A motion for class certification under Federal Rule of Civil Procedure 23 involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *Vogt*, 2018 WL 1955425, at *2; Fed. R. Civ. P. 23(a)-(b). Plaintiffs request certification for settlement purposes only under Rule 23(b)(3), which requires that the common questions predominate over any individualized questions, and that a class action is a superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). A district court has broad discretion in deciding whether a particular action complies with the requirements of Rule 23. *Vogt*, 2018 WL 1955425, at *2.

### B. The Settlement Class Satisfies the Requirements of Rule 23.

#### 1. The Settlement Class meets each of the requirements of Rule 23(a).

The Settlement Class satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. First, the Settlement Class satisfies the numerosity requirement because it

41

is comprised of owners of approximately 760,000 Policies sold by State Farm throughout the country. Siegel Dec., ¶ 192; *Vogt*, 2018 WL 1955425, at *2 ("In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims," concluding numerosity was satisfied for a class of approximately 24,000 Missouri policy owners) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)).

Second, commonality is satisfied because the Policies are standard form contracts and State Farm performs uniformly under them as to its inclusion of unlisted profit and expense factors in the COI Rates as to all Settlement Class Members. *Vogt*, 2018 WL 1955425, at *3 (finding commonality satisfied because plaintiff's claims all turned on interpretation of the standard form policy and State Farm's uniform incorporation of non-mortality factors into its COI Rates); *see also, e.g.*, *Bally*, 335 F.R.D. 288, 301-02 (N.D. Cal. 2020); *Whitman*, 2021 WL 4264271, at *3 n.3; *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, 2022 WL 911739, at *9 (D. Minn. Mar. 29, 2022) (finding commonality satisfied for similar claims for breach of universal life insurance policies as to multi-state class because "each turn on the interpretation of materially similar provisions in form UL insurance policies"); *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (finding commonality satisfied where breach arose from form contract term).

Further, because each Plaintiff is the owner of one of the Policies and, like every policy owner, was charged COI Rates containing the allegedly improper amounts, their claims are typical of the Settlement Class and their interests are aligned with all policy owners in seeking to recover the amounts that allegedly violated the Policies. *See Vogt*, 2018 WL 1955425, at *4-5 (finding the plaintiff had no conflicts with other policy owners and that his claims were typical of those of the class because the claims arose from and related to the interpretation and application of the Policy

and the policy language, and State Farm's methodology for determining COI Rates was uniform for all class members), *aff'd*, 963 F.3d at 767 ("[T]o forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole.") (quoting *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012)); *Bally*, 335 F.R.D. at 300; *Whitman*, 2021 WL 4264271, at *4; *Jaunich*, 2021 WL 5054461, at *4 n.4; *Page*, 2022 WL 406415, at *11; *McClure*, 341 F.R.D. at 250; *Toms*, 2022 WL 5238841, at *7-8.

In addition, as explained in Part V.B.1., *supra*, Class Counsel also satisfy the adequacy requirement because they are competent, experienced, and qualified with significant expertise in class actions and cost of insurance cases, including those asserted in this litigation.

Thus, the Settlement Class satisfies the Rule 23(a) requirements.

### 2. The Settlement Class meets the requirements of Rule 23(b)(3).

Rule 23(b)(3) "requires that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vogt*, 2018 WL 1955425, at *5 (quoting Fed. R. Civ. P. 23(b)(3)). As several courts have now concluded, the question whether State Farm's uniform conduct violated the common form Policies is a common, predominating one. *E.g.*, *id.* at *6 (finding predominance satisfied because "[t]he major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis."); *Bally*, 335 F.R.D. at 304; *Whitman*, 2021 WL 4264271, at *5-9; *Jaunich*, 2021 WL 5054461, at *4; *Page*, 2022 WL 406415, at *12-15; *McClure*, 341 F.R.D. at 251-54; *Toms*, 2022 WL 5238841, at *8-9. And that is so even though Settlement Class Members' Policies were issued throughout the country and could be governed by the substantive laws of their respective states

because states' breach of contract laws are materially the same, and the contracts at issue are uniform. *See Am. Airlines, Inc v. Wolens*, 513 U.S. 219, 233, n.8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and confusing."); *Burnett v. CNO Fin. Grp., Inc.*, 2022 WL 896871, at *13 (S.D. Ind. Mar. 25, 2022) (certifying multi-state class for breach of COI provision of life insurance policies, noting that "in cases arising under common law, the legal 'principles are the same, or materially the same, in many or even all U.S. states.'") (quoting *Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013)); *Advance Trust & Life Escrow Services, LTA v. North Am. Co. for Life and Health Ins.*, --- F. Supp. 3d ----, 2022 WL 883750, at *13 (S.D. Iowa Mar. 22, 2022) (finding predominance satisfied for similar claims for proposed multi-state class of policy owners because "'the relevant contract term was uniform.'") (quoting *Custom Hair Designs by Sandy v. Cent. Payment Co.*, 984 F.3d 595, 601 (8th Cir. 2020)).

Courts have also repeatedly recognized that under the facts here, proceeding as a class action is superior to individualized proceedings. *Vogt*, 2018 WL 1955425, at *7; *Bally*, 335 F.R.D. at 305; *Whitman*, 2021 WL 4264271, at *10; *Jaunich*, 569 F. Supp. 3d at 919; *Page*, 584 F. Supp. 3d at 224; *McClure*, 341 F.R.D. at 254; *Toms*, 2022 WL 5238841, at *9. The requested certification here for purposes of effectuating the Settlement is likewise superior "because a class-wide settlement is a more efficient use of the parties'—and the judiciary's—resources." *See Komoroski v. Util. Serv. Partners Priv. Label, Inc.*, No. 4:16-CV-00294-DGK, 2017 WL 3261030, at *6 (W.D. Mo. July 31, 2017). Further, because Plaintiffs seek class certification for purposes of Settlement, the Court need not consider whether certifying a nationwide class for trial would raise manageability concerns. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ.

44

Proc. 23(b)(3)(D), for the proposal is that there be no trial."); *Keil*, 862 F.3d at 695 (recognizing that certification of a multi-state class for litigation may have created "intractable management problems," but that these issues do not prevent certification for purposes of settlement and instead indicated settlement was the best outcome). Thus, the Settlement Class satisfies Rule 23(b)(3).

\*    \*    \*

Therefore, because the proposed Settlement Class satisfies the requirements for class certification, the Court should conclude that it will likely be able to certify the Settlement Class for purposes of judgment on the Settlement, Fed. R. Civ. P. 23(e), and therefore that issuing Notice to the Settlement Class is justified.

## VII.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS INTERIM CLASS COUNSEL.

As explained at Part V.B.1., *supra*, the undersigned counsel are highly experienced in class actions and litigation of this type, and have developed an unmatched depth of knowledge on the facts and legal issues related to the claims in this case. The undersigned have also shown perseverance and dedication to advancing the claims of the Settlement Class. Several courts have recognized the adequacy of Plaintiffs' counsel here to represent the interests of State Farm policy owners. Plaintiffs thus request that the undersigned counsel be appointed as interim Class Counsel pursuant to Rule 23(g)(3) pending certification of the Settlement Class at Final Approval, for purposes of carrying out the issuance of Notice to the Settlement Class.

## VIII.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS.

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual

45

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he notice need only satisfy the 'broad 'reasonableness' standards imposed by due process.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975)). The Supreme Court has found that the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950); *see also* American Law Institute, Principles of the Law of Aggregate Litigation § 3.04(a) (2010) ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing and to lodge written objections by a prescribed date should they so desire.").

The proposed Notice (Exhibit A to the Settlement Agreement) readily meets these requirements, and the notice program, using direct mail delivery, constitutes the best practicable notice under the circumstances of this case. *See* Ex. 5, Azari Dec., ¶ 11. The Notice uses "plain English" to inform Settlement Class Members of, among other things, the nature of the class claims, the essential terms of the Settlement, the date, time and place of the Fairness Hearing, how to object or opt-out of the Settlement, and the binding effect of the Settlement on Settlement Class Members. The Notice also contains information regarding Class Counsel's forthcoming request for fees and expenses, and the proposed Service Awards to Plaintiffs. In addition, the Notice identifies and directs Settlement Class Members to the Settlement Website, where they can view the Settlement documents and relevant pleadings and motions. Agreement, ¶¶ 1.40, 4.6. Thus, the Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), informs

Settlement Class Members of the terms of the proposed Settlement and their available options, is the best notice that is practicable under the circumstances, and should be approved by the Court.

## IX. THE COURT SHOULD APPOINT EPIQ AS SETTLEMENT ADMINISTRATOR.

Plaintiffs also request that the Court appoint Epiq to serve as Settlement Administrator. Epiq is well-versed in administering class action settlements, including in the cost of insurance litigation context (*see generally* Azari Dec.), and is willing, able, and prepared to fulfill the role of Settlement Administrator in this case.

## X. PROPOSED TIMELINE OF EVENTS

In connection with its determination on whether it is likely to approve the Settlement, the Court should set a Fairness Hearing date; dates for Notice; deadlines for objecting or opting out of the Settlement, and a schedule for further court submissions, among other items. The Parties propose the schedule set forth in Appendix A hereto, which is keyed off of the date of the order granting preliminary approval and permitting the issuance of notice.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order at Exhibit C to the Agreement permitting issuance of notice of the proposed Settlement, appointing the undersigned counsel as interim Class Counsel of the proposed Settlement Class, directing dissemination of the Notice, appointing Epiq as Settlement Administrator, and setting a Fairness Hearing for the purpose of deciding whether to grant final approval of the Settlement.

47

Date: November 22, 2022                    **STUEVE SIEGEL HANSON LLP**

_/s/ Norman E. Siegel_
Norman E. Siegel
siegel@stuevesiegel.com
Bradley T. Wilders
wilders@stuevesiegel.com
Lindsay Todd Perkins
perkins@stuevesiegel.com
Ethan M. Lange
lange@stuevesiegel.com
David A. Hickey
hickey@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:  816-714-7100\
Fax:  816-714-7101

MILLER SCHIRGER, LLC
John J. Schirger
jschirger@millerschirger.com
Matthew W. Lytle
mlytle@millerschirger.com
Joseph M. Feierabend
jfeierabend@millerschirger.com
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel:  816-561-6500
Fax:  816-561-6501

Attorneys for Plaintiffs and the Putative Settlement
Class

| EVENT | TIMING |
|---|---|
| Deadline for Settlement Administrator to disseminate CAFA notices | [10 days from filing of Motion for Preliminary Approval] |
| Deadline for State Farm to provide Notice List to Settlement Administrator | [14 days after Preliminary Approval Date] |
| Deadline for the Settlement Administrator to mail Court-approved Notice to Settlement Class ("Notice Date") | [45 days after Preliminary Approval Date] |
| Deadline to file Class Counsel's motion for Fees and Expenses and for Service Awards | [21 days prior to the Objection deadline] |
| Deadline for motion for final approval of Settlement | [7 days prior to the Fairness Hearing] |
| Objection deadline | [35 days after Notice Date] |
| Opt-out deadline | [35 days after Notice Date] |
| Deadline for Class Counsel to file with the Court all objections served on the Settlement Administrator | [5 days after Objection deadline] |
| Deadline for responses to any timely objections | Any time prior to Fairness Hearing |
| Fairness Hearing | [Approx. 100 days after prelim approval order] |