# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

DAVID M. ROGOWSKI, ELIZABETH A.
BALLY, KATHY BAUER, KIM BOTTE,
JOHN E. JAUNICH, MYLENE MCCLURE *as
personal representative of* THE ESTATE OF
EARL L. MCCLURE, RONALD K. PAGE,
CHANDRA B. SINGH, JOYCE THOMAS,
DAVID TOMS, and WILLIAM T.
WHITMAN, Individually and On Behalf Of All
Others Similarly Situated,

       Plaintiffs,

vs.

STATE FARM LIFE INSURANCE COMPANY
and STATE FARM LIFE AND ACCIDENT
ASSURANCE COMPANY,

       Defendants.

Case No. 4:22-cv-00203-RK

---

**PLAINTIFFS' UNOPPOSED[1] MOTION PURSUANT TO RULE 23(E) FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES, COSTS,
EXPENSES AND SERVICE AWARDS, AND SUGGESTIONS IN SUPPORT**

Norman E. Siegel, MO Bar # 44378
Bradley T. Wilders, MO Bar # 60444
Lindsay Todd Perkins, MO Bar # 60004
Ethan M. Lange, MO Bar # 67857
David A. Hickey, MO Bar # 62222

John J. Schirger, MO Bar # 60583
Matthew W. Lytle, MO Bar # 59145
Joseph M. Feierabend, MO Bar # 62563

**STUEVE SIEGEL HANSON LLP**

**MILLER SCHIRGER, LLC**

*Attorneys for Plaintiffs and the Settlement Class*

---

[1] Defendants do not oppose the relief sought by this motion and agree that the Court should grant final approval of the proposed settlement. By not opposing this relief, State Farm does not concede the factual basis for any claim and denies liability. The description of the proceedings, including prior proceedings and proceedings in the related cases, as well as legal, factual and expert arguments, is Plaintiffs', and State Farm may disagree with certain of those characterizations and descriptions. State Farm reserves the right to challenge Plaintiffs' characterizations and descriptions.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 2

        A.      Summary of the Litigation ......................................................................... 2

        B.      Summary of the Settlement ......................................................................... 3

        C.      The Settlement Class ................................................................................... 4

        D.      The Court's Preliminary Approval Order ................................................... 4

        E.      The Class Notice Program ........................................................................... 5

        F.      The Settlement Class's Positive Reaction to the Settlement ...................... 6

III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED. ............................... 6

        A.      Standard for Final Approval ........................................................................ 6

        B.      The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant
                to the Factors Identified in Rule 23(e) and *Van Horn* ............................... 7

                1.      The Class Representatives and Class Counsel Have Provided
                        Excellent Representation to the Class. ........................................... 8

                2.      The Settlement Is the Product of Arm's Length Negotiations. ........ 10

                3.      The Relief Provided by the Settlement Is Excellent. ...................... 10

                        a.      The duration, costs, risks, and delay of trial and
                                appeal support approval of the Settlement. ....................... 10

                        b.      The effectiveness of the proposed method of distributing relief
                                to the Settlement Class supports approval of the Settlement. ....... 15

                        c.      The terms for the award of attorneys' fees, including the
                                timing of payment, support approval of the Settlement. ............... 15

                        d.      There is no agreement required to be identified under Rule
                                23(e)(3). ................................................................... 15

4. The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement.................................. 16

5. State Farm's Financial Condition................................................................ 16

6. The Amount of Opposition to the Settlement Supports Approval. ........... 17

IV. CERTIFICATION OF A SETTLEMENT CLASS REMAINS APPROPRIATE. ............ 18

V. THE COURT SHOULD GRANT CLASS COUNSEL'S MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES, AND SERVICE AWARDS. ..................... 19

CONCLUSION....................................................................................................................... 23

CERTIFICATE OF SERVICE ............................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................................................................. 21

*Bally v. State Farm Life Ins. Co.*,
    335 F.R.D. 288 (N.D. Cal. 2020). .......................................................................................... 8

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d. Cir. 1993) ................................................................................................... 18

*Burnham v. Papa John's Paducah, LLC*,
    No. 5:18-CV-112-TBR, 2020 WL 2065793 (W.D. Ky. Apr. 29, 2020) ................................... 23

*Carlson v. C.H. Robinson Worldwide, Inc.*,
    No. CIV 02-3780 JNE/JJG, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ........................... 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................................. 18

*Claxton v. Kum & Go, L.C.*,
    No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) ........................... 17

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ...................................................................................... 9, 17, 18

*Holt v. Community America Credit Union*,
    No. 4:19-CV-00629-FJG, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) ............................... 7

*In re Checking Acct. Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................. 15

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012) .................................................................................................. 19

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
    847 F.3d 619 (8th Cir. 2017) .................................................................................................. 19

*In re Syngenta AG MIR 162 Corn Litig.*,
    61 F.4th 1126, 2023 WL 2262878 (10th Cir. 2023) .............................................................. 22

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) .................................................................................................. 14

*In re Zurn Pex Plumbing Products Liab. Litig.*,
    No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ......................... 13

*Jaunich v. State Farm Life Ins. Co.*,
    569 F. Supp. 3d 912 (D. Minn. 2021) .................................................................... 8

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ................................................................... passim

*Kelly v. Phiten USA, Inc.*,
    277 F.R.D. 564 (S.D. Iowa 2011) .............................................................. 10, 14

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) .................................................................... 14, 16

*McClure v. State Farm Life Ins. Co.*,
    341 F.R.D. 242 (D. Ariz. 2022) ..................................................................... 8

*Norem v. Lincoln Benefit Life Co.*,
    737 F.3d 1145 (7th Cir. 2013) ..................................................................... 11

*Page v. State Farm Life Ins. Co.*,
    584 F. Supp. 3d 200 (W.D. Tex. 2022) ......................................................... 8

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .................................................................... 18

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ..................................................................... 22

*Slam Dunk I, LLC v. Connecticut General Life Ins. Co.*,
    853 F. App'x 451 (11th Cir. 2021) .............................................................. 11

*Soderstrom v. MSP Crossroads Apartments LLC*,
    No. CV 16-233 ADM/KMM, 2018 WL 692912 (D. Minn. Feb. 2, 2018) ............... 19

*Spegele v. USAA Life Ins. Co.*,
    No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ................ 9

*Toms v. State Farm Life Ins. Co.*,
    No. 8:21-cv-0736-KKM-JSS, 2022 WL 5238841 (M.D. Fla. Sept. 26, 2022) ......... 8

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) ............................................................. 19

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................................ 21

*Tussey v. ABB, Inc.*,
    No. 06-CV04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ................ 21

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ............................................................................ passim

*Vill. Bank v. Caribou Coffee Co., Inc.*,
    No. 19-CV-1640 (JNE/HB), 2020 WL 13558808 (D. Minn. July 24, 2020) .......................... 10

*Vogt v. State Farm Life Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020) ........................................................................... 8

*Waggoner v. U.S. Bancorp*,
    No. 5:14-CV-1626, 2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) ......................................... 23

*Whitman v. State Farm Life Ins. Co.*,
    No. 3:19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) ............................ 8

*Yarrington v. Solvay Pharms., Inc*.,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ................................................................. 19

**Statutes**

28 U.S.C. § 1715 ................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

# I. INTRODUCTION

The $325 million class action settlement ("Settlement"[2]) before the Court between Plaintiffs David Rogowski, Elizabeth Bally, Kathy Bauer, Kim Botte, John Jaunich, Mylene McClure as personal representative of the Estate of Earl McClure, Ronald Page, Chandra Singh, Joyce Thomas, David Toms, and William Whitman ("Plaintiffs"), on behalf of the nationwide Settlement Class, and Defendants State Farm Life Insurance Company and State Farm Life and Accident Assurance Company (collectively, "State Farm"), is an extraordinary result for the Settlement Class Members, providing them cash compensation for the allegedly excessive cost of insurance charges State Farm deducted from their accounts over decades in amounts representing a substantial portion of the alleged overcharges they each suffered.

The Settlement was reached following more than 6 years of intensive and contentious litigation in multiple district and appellate courts across the United States, which included numerous class certification rulings favoring Plaintiffs and dispositive rulings favoring both sides. The Settlement is the largest ever reached in this type of litigation. At the preliminary approval stage, the Court concluded that the Settlement appeared to be fair, reasonable, and adequate and that the standards for class certification were satisfied. Having now been notified of the Settlement, the reaction of Settlement Class Members demonstrates their overwhelming support for the Settlement. Indeed, from a Settlement Class of owners of over 760,000 policies, *no* objections to the Settlement have been submitted, and only a single objection was made as to Class Counsel's fee request. Plaintiffs therefore move the Court for an order finally approving the Settlement and entering final judgment thereon.

---

[2] All defined terms herein have the same meanings ascribed to them in the Settlement Agreement.

1

## II.     FACTUAL BACKGROUND

### A.     Summary of the Litigation

A detailed history of this multi-state class action (*Rogowski*) and the nine Related Actions (collectively, the "Litigation") was set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 47) and the Declaration of Norman E. Siegel in support of that motion (Doc. 47-2) (Siegel Decl.), which is incorporated by reference here. Highly summarized, Plaintiffs challenge how State Farm determined the cost of insurance ("COI") rates for its universal life insurance policies as issued on Forms 94030/A94030 and 94080/A94080 (the "Policies"). Plaintiffs allege the Policies do not authorize State Farm to include non-mortality profits or expenses in the COI rates and that State Farm's use of such factors breaches both the COI rates provision and the separate fixed monthly Expense Charge in the Policies. Before Plaintiffs' claims were consolidated before this Court, Plaintiffs litigated their claims through ten separate cases in ten different jurisdictions. At the time of the Settlement, Plaintiffs had obtained seven favorable class certification orders and ten favorable *Daubert* orders related to their expert's calculation of class-wide damages. However, while Plaintiffs had also obtained several favorable summary judgment rulings on the issue of policy interpretation, the results there were mixed, with two courts rejecting all or part of Plaintiffs' key liability theories and one court limiting the available damages on the basis of State Farm's statute of limitations defense. At the time of Settlement, two cases were close to trial and one case was on appeal to the Ninth Circuit on the key issue of whether the Policies authorize how State Farm determined its COI rates.

The negotiations that culminated in the Settlement were conducted by highly qualified and experienced counsel on both sides at arm's length over three separate full-day mediations with the assistance of two highly respected, experienced, neutral mediators. Due to the extensive history of the Litigation and Class Counsel's deep experience in litigating cases of this type, Class Counsel

were well informed of the material facts and legal risks and well-positioned to evaluate State Farm's defenses and the risks facing the Settlement Class Members. Indeed, the risk of continued litigation to Plaintiffs and the similarly situated policy owners, and to State Farm, had crystalized at the time of Settlement. The negotiations were hard-fought and non-collusive, Class Counsel advocated for a fair and reasonable settlement that serves the best interests of the Settlement Class, and the resulting extraordinary $325 million Settlement should be finally approved.

### B. Summary of the Settlement

The Settlement Agreement represents a compromise regarding the claims pled in the Second Amended Class Action Complaint. *See* Doc. 47-1 ("Agreement"). Pursuant to the Agreement, State Farm funded the Settlement Fund in the amount of $325,000,000 shortly after the Court entered its Preliminary Approval Order. *Id.* ¶ 2.1. The Settlement Fund is non-reversionary, *id.* ¶¶ 1.38, 2.1, and there is no "claims process." Each Settlement Class Member will receive their share of the Net Settlement Fund pursuant to the Distribution Plan developed by Class Counsel. *Id.* ¶¶ 2.2-2.3. Pursuant to the Agreement, Class Counsel have moved for an attorney's fee award to be paid from the Settlement Fund in the amount of one-third of the Settlement Fund and reimbursement of costs and expenses from the Settlement Fund in the amount of $1,358,443.06. Doc. 59; *see* Agreement, ¶ 8.1. Class Counsel have also moved for $25,000 Service Awards for the Plaintiffs to be paid from the Settlement Fund. Doc. 59; *see* Agreement, ¶ 8.2. The Settlement Fund will also be used to pay for the fees and expenses of the Settlement Administrator. Agreement, ¶¶ 1.19, 1.34, 1.38.

The Agreement allocates the value of the Settlement Fund across the Settlement Class pursuant to an objective Distribution Plan that is designed to provide each Settlement Class Member a minimum payment of $10 plus a pro rata portion of the Net Settlement Fund according to the amount of Monthly Deductions (comprised of the COI and Expense Charges) paid by each

Settlement Class Member, with equitable adjustments for Settlement Class Members who still have active Policies and those who already received a share of the judgment in *Vogt v. State Farm Life Insurance Co.*, No. 2:16-CV-04170-NKL. *See* Doc. 47-3 (Witt Decl. & Ex. B thereto). In exchange, Plaintiffs and the Settlement Class Members will release all claims arising out of the facts asserted in this case. Agreement, ¶¶ 3.1-3.7.

### C. The Settlement Class

The Settlement Class includes the persons or entities who own or owned one or more of approximately 760,000 Policies issued or administered by State Farm or its predecessors. The Settlement Class is made up of the Owners of the Policies on the Class List.[3] *Id.* ¶¶ 1.6, 1.27.[4]

### D. The Court's Preliminary Approval Order

On December 16, 2022, the Court entered its order preliminarily approving the Settlement and ordering that notice of the Settlement should issue to the Settlement Class. Doc. 54. As discussed in more detail below, the Court concluded it would likely approve the Settlement as fair, reasonable, and adequate and certify the Settlement Class for purposes of entering judgment on the Settlement. *Id.* at 2-3. The Court also appointed the undersigned Plaintiffs' counsel as Class Counsel pursuant to Rule 23(g)(3) and appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator. *Id.* at 3. The Court also approved the Class Notice and

---

[3] Due to the size of the Class List, Plaintiffs are not filing it through CM/ECF, but will provide it to the Court upon request. The class definition, along with the identification in the Final Judgment of the policy owners who have excluded themselves from the Settlement Class, satisfies Rule 23(c)(3)(B).

[4] The Settlement Class excludes State Farm; any entity in which State Farm has a controlling interest; any of the officers or board of directors of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiffs' counsel's firms; any Judge to whom this Action or a Related Action is assigned, and his or her immediate family; and the 42 policy owners who timely and properly excluded themselves from the Settlement Class. Agreement, ¶¶ 1.36, 5.3.

found that it and the proposed method for its delivery by first-class mail constituted the best practicable notice to the Settlement Class. *Id.* at 4. The Court thus directed the Settlement Administrator and the Parties to carry out the Class Notice program. *Id.* The Court set a deadline of March 6, 2023, for Settlement Class Members to submit objections to the Settlement or to opt-out of the Settlement Class and scheduled a Fairness Hearing for April 4, 2023. *Id.* at 6.

E.    **The Class Notice Program**

On December 2, 2022, on behalf of State Farm, Epiq served notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). Ex. 1 (Azari Decl.), ¶ 8. From January 26, 2023, through January 30, 2023, Epiq mailed the Court-approved Class Notice to members of the Settlement Class. *See id.* ¶ 10. Prior to mailing, all addresses were updated using the National Change of Address database maintained by the United States Postal Service ("USPS"), certified via the Coding Accuracy Support System and verified through Delivery Point Validation. *Id.* USPS automatically forwards Class Notices with an available forwarding address order that has not expired. *Id.* ¶ 11. Epiq re-mailed Class Notices that were returned as undeliverable where new addresses were available through USPS information (for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated; or to better addresses that may be found using a third-party lookup service). *Id.* Epiq's individual notice efforts resulted in the Class Notice being delivered to over 96% of the identified Settlement Class Members. *Id.* ¶ 13.

On January 26, 2023, Epiq also established a dedicated Settlement Website where Settlement Class Members have been able to obtain detailed information about the case and review key documents, including the operative Complaint, Answer, Class Notice, Settlement Agreement,

5

Preliminary Approval Order, and Class Counsel's Motion for Attorney's Fees, Costs, Expenses, and Service Awards. *Id.* ¶ 14. Epiq also established a toll-free telephone number on January 26, 2023, where Settlement Class Members can call for additional information, listen to answers to FAQs, and request that a Class Notice be mailed to them. *Id.* ¶ 15.

### F. The Settlement Class's Positive Reaction to the Settlement

Only 42 policy owners submitted valid requests to opt-out of the Settlement Class, and no objections to the Settlement were submitted. Only one objection was made to Class Counsel's attorney's fee request. *Id.* ¶ 17; Doc. 60.

## III. THE SETTLEMENT SHOULD BE FINALLY APPROVED.

### A. Standard for Final Approval

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). The Settlement should be approved because it is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and those identified by the Eighth Circuit in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). *See* Doc. 47 at 35-36 (identifying standard).[5]

The factors identified in Federal Rule of Civil Procedure 23(e)(2) are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

---

[5] Docket citations to page numbers are to the CM/ECF page numbers.

Fed. R. Civ. P. 23(e)(2). The four *Van Horn* factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Van Horn*, 840 F.2d at 607. "No one factor is determinative, but the 'most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement.'" *Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG, 2020 WL 12604383, at *2 (W.D. Mo. Sept. 4, 2020) (quoting *Van Horn*, 840 F.3d at 607).

In granting preliminary approval of the Settlement, the Court concluded that it would likely be able to: (i) approve the Settlement as fair, reasonable, and adequate under the above factors; and (ii) certify the Settlement Class for purposes of entering judgment on the Settlement. Fed. R. Civ. P. 23(e)(1)-(2); Doc. 54. There has been no change in circumstances that would warrant the Court reaching any other conclusion now. Indeed, the Settlement Class Members, now having been apprised of the Settlement, have shown their overwhelming support for it as judged by the very small number of policy owners who have chosen to exclude themselves from the Settlement Class and the lack of objections to the Settlement from Settlement Class Members. For completeness, Plaintiffs analyze the relevant factors again below.

**B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Factors Identified in Rule 23(e) and *Van Horn*.**

As demonstrated below, the proposed Settlement is fair, reasonable, and adequate under the factors identified in Rule 23(e) and by the Eighth Circuit in *Van Horn* such that the Court should finally approve the Settlement.

1. **The Class Representatives and Class Counsel Have Provided Excellent Representation to the Class.**[6]

The adequacy of representation factor supports a finding that the Settlement is fair, reasonable, and adequate. The Court concluded so in entering preliminary approval. Doc. 54 at 2 ("Class Representatives and Class Counsel have provided adequate representation to the Settlement Class."). First, the Plaintiffs have shown their dedication to representing the Settlement Class, each providing information and documents, and many sitting for depositions, in connection with the Litigation. Each Plaintiff has worked with counsel to advance the Litigation on behalf of themselves and all members of the proposed Settlement Class, and each supports the Settlement and advocates for its approval.

Second, Class Counsel are competent, experienced and qualified with expertise in class actions and cost of insurance cases on this and other life insurance policies and have vigorously prosecuted the claims asserted in this case. Class Counsel have been appointed as class counsel in dozens of class actions throughout the country, including the *Vogt* case that commenced this litigation, as well as the several cases against State Farm that followed *Vogt* and are part of this Litigation.[7] Moreover, Class Counsel have significant experience handling complex disputes, including lawsuits involving life insurance contracts. *See* Doc. 47-2 (Siegel Decl.), ¶¶ 5-8, 193 & Ex. A; Doc. 47-4 (Schirger Decl.), ¶ 14 & Ex. A. The firms also have experience taking similar cases to trial, including securing a jury verdict of $34,333,495.81 for Missouri policy owners in

---

[6] *See* Fed. R. Civ. P. 23(e)(2)(A).

[7] *See Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-6025-BJR, 2021 WL 4264271, at *4 (W.D. Wash. Sept. 20, 2021); *Page v. State Farm Life Ins. Co.*, 584 F. Supp. 3d 200, 220 (W.D. Tex. 2022); *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 251 (D. Ariz. 2022); *Toms v. State Farm Life Ins. Co.*, No. 8:21-cv-0736-KKM-JSS, 2022 WL 5238841, at *8 (MD. Fla. Sept. 26, 2022); *Jaunich v. State Farm Life Ins. Co.*, 569 F. Supp. 3d 912 (D. Minn. 2021).

*Vogt*, which was affirmed on appeal. *See Vogt*, Doc. 358 & 360, *aff'd*, 963 F.3d 753 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (Apr. 19, 2021). And just last December, these firms secured another class-wide jury verdict on behalf of Missouri policy owners in the amount of $28.36 million against Kansas City Life Insurance Company in another cost of insurance overcharge case. *See Karr v. Kansas City Life Ins. Co.*, 1916-CV26645 (Mo. Cir.).

In addition, in 2021, Class Counsel settled a similar case against USAA Life Insurance Company, obtaining $90 million for a class of universal life insurance policy owners. *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021), and in 2018, Class Counsel settled a similar case against John Hancock Life Insurance Company, obtaining $59.75 million for a class of whole life insurance policy owners. *See Larson v. John Hancock Life Ins. Co*., No. RG16813803 (Alameda Cty., Cal.). In 2016, Class Counsel settled another similar case against Lincoln National Life Insurance Company, obtaining $2.25 billion of guaranteed term life insurance with a market value of approximately $171.8 million for a class of policy owners. *See Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Cty., Ind.).

Class Counsel's depth of knowledge and experience gained through *Vogt* and the Litigation here, as well as from cases challenging cost of insurance provisions in other similar life insurance policies, allowed them to accurately evaluate and weigh the risks of continued litigation to reach an outstanding settlement of the claims asserted here, which Class Counsel believe to be in the best interests of Plaintiffs and the Settlement Class. Doc. 47-2 (Siegel Decl.), ¶¶ 5-8, 193; Doc. 47-4 (Schirger Decl.), ¶¶ 14, 19. This factor thus supports finding that the Settlement is fair, reasonable, and adequate, and therefore, its final approval. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (stating class counsel's "experience in this type of litigation" supports providing deference to their views as to the fairness of the settlement).

9

### 2. The Settlement Is the Product of Arm's Length Negotiations.[8]

The extent and scope of this Litigation confirms the Court's finding that the Settlement is the product of arm's length negotiations. Doc. 54 at 2. The Settlement is the result of significant negotiation by experienced counsel on both sides with the assistance of two experienced, well-respected neutral mediators, culminating in the execution of the Agreement. *See* Doc. 47-2 (Siegel Decl.), ¶¶ 190-91. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair, reasonable, and adequate. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Vill. Bank v. Caribou Coffee Co., Inc.*, No. 19-CV-1640 (JNE/HB), 2020 WL 13558808, at *2 (D. Minn. July 24, 2020) (finding that "[t]he assistance of a retired United States Magistrate Judge as a mediator in the settlement process supports the conclusion that the Settlement was non-collusive and fairly negotiated at arm's length"); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (finding settlement's fairness was supported by the fact that it was reached "after significant investigation and extensive arm's-length negotiations"). This factor supports the Court's final approval of the Settlement.

### 3. The Relief Provided by the Settlement Is Excellent.[9]

#### a. The duration, costs, risks, and delay of trial and appeal support approval of the Settlement.[10]

The $325,000,000 Settlement marks the largest cash settlement in any litigation involving

---

[8] *See* Fed. R. Civ. P. 23(e)(2)(B).

[9] Fed. R. Civ. P. 23(e)(C).

[10] Fed. R. Civ. P. 23(e)(2)(C)(i). Plaintiffs also address herein *Van Horn* factors 1 and 3: "the merits of the plaintiffs' case weighed against the terms of the settlement," and "the complexity and expense of further litigation." *Van Horn*, 840 F.2d at 607.

how an insurance company determines its cost of insurance charges. The fund amount represents almost 100 percent of the claimed damages for the Settlement Class for Count II and approximately one-third of the damages for Count I. The Court previously concluded that the Settlement "is a sound result for the Settlement Class in comparison to the substantial litigation risks facing the Settlement Class Members given the various liability rulings and appellate risk." Doc. 54 at 2.

The Court further found that "the length of time and the expense that would be necessary to litigate Plaintiffs' cases through trials and appeals would be considerable." *Id.* In the absence of the Settlement, the Settlement Class Members face significant risks, costs, and delay in reaching a litigated judgment in their favor. As explained in Plaintiffs' preliminary approval motion, courts have reached various readings of the relevant policy language, and it is unknown if, going forward, courts will coalesce around a reading in favor of the policy owners or State Farm, or whether they will coalesce at all. It has been difficult to predict the outcome, even among courts in the same Circuit, as evidenced by the adverse statute-of-limitations ruling in *Jaunich* and the conflicting opinions in *Bally*, *McClure*, and *Whitman*. Absent settlement, the issue of policy interpretation would soon be before the Ninth Circuit, with State Farm urging application of the Seventh Circuit's interpretation in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013) and the Eleventh Circuit's interpretation in *Slam Dunk I, LLC v. Connecticut General Life Insurance Co.*, 853 F. App'x 451 (11th Cir. 2021) to construe the Policies as authorizing State Farm to use unlisted, non-mortality factors to determine the COI rates. State Farm has, at least as to the *Bally* and *Whitman* courts, successfully argued that the Eighth Circuit's opinion in *Vogt* should not be followed. Thus, there remains a significant risk policy owners could recover nothing through further litigation.

Further, State Farm has consistently and forcefully argued that Plaintiffs' expert's damages calculations are unreliable, cannot be used to prove damages class-wide, and should be rejected by

a jury. Since suffering the adverse judgment in *Vogt*, State Farm's defenses have evolved, and State Farm has disclosed four entirely different experts in these cases, including experts on consumer behavior, actuarial science and pricing, and insurance regulation. None of these experts have been tested at trial; and, to date, none of the courts presiding over these cases have excluded the testimony of any State Farm experts.

State Farm's economist, Dr. Lauren Stiroh, also offers multiple damage-reducing opinions, including opinions that, if accepted, would reduce Count I damages by approximately 4 percent based on State Farm's "crossover" defense (which the *Vogt* jury accepted); 22 percent based on State Farm's "pooled rates" defense; and 18 percent based on State Farm's defense that it would not have credited interest above the minimum rate if it could not include profits and expenses in its COI Charge. Collectively, these opinions, if they had been accepted by a jury, would have significantly reduced overall damages even in cases where Plaintiffs prevailed on the issue of policy-interpretation and liability. Dr. Stiroh also opines that no policy owner suffered economic harm at all; and, therefore, no class member had damages in the "but for" world where State Farm did not breach the Policies. Thus, even if Plaintiffs had prevailed on liability, they faced risk at trial of a zero-dollar judgment or an award of a significantly reduced amount. Except for the crossover and pooled-rates defenses, these other arguments were not tested in *Vogt*.

For these reasons, even if Plaintiffs were to prevail on their interpretation of the policy language, thereby establishing State Farm's liability for breach, there is significant uncertainty as to the damages that would be recovered at trial, particularly where State Farm has challenged Plaintiffs' claims as barred or substantially limited by the statute of limitations, requiring Plaintiffs to prevail on establishing that the statute of limitations was tolled to recover. Proving the Plaintiffs' claims through trial would thus be a lengthy, costly, and uncertain process. *Keil v. Lopez*, 862 F.3d

685, 698 (8th Cir. 2017) ("Class actions, in general, place an enormous burden of costs and expense upon parties. Here, the application of numerous states' laws made this a particularly complex case.") (quotations omitted); *In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013) (recognizing that "[t]he complexity and expense of class action litigation is well-recognized" and that "various procedural and substantive defenses . . ., the expense of proving class members' claims, the certainty that resolution under [a] settlement will foreclose any subsequent appeals, and the fear that, unsettled, the ultimate resolution of the action . . . could well extend into the distant future, all weigh in favor of the settlement's approval."). In contrast, the Settlement, which provides nearly full damages under Count II and a material portion of the damages under Count I, is an excellent result.

Finally, State Farm—which has retained several lawyers from multiple large, well-respected, and well-resourced law firms—has demonstrated it will challenge Plaintiffs' claims to the highest appellate levels, as it did in *Vogt*, where it sought rehearing by the Eighth Circuit panel and en banc review, moved to recall that Court's mandate, petitioned for certiorari to the United States Supreme Court, and fully litigated a second, collateral appeal on prejudgment interest, before ultimately paying the judgment. As it litigated its various challenges to the maximum extent possible, the class members in *Vogt*, who prevailed at trial in June 2018, were not paid until 2022. Doc. 47-2 (Siegel Decl.), ¶ 30. Thus, even if Plaintiffs were to prevail on all issues in their respective cases, an uncertain proposition that itself would take considerable time for the reasons explained above, they would likely not obtain their due recovery for years. This delay further supports a finding that the Settlement, which provides certain recovery in the near-term in an amount representing a material portion of the damages that Settlement Class Members could have obtained had they prevailed in full on the merits of their claims, and more than they could have

recovered if State Farm prevailed on any one of its challenges or defenses, is a fair, reasonable, and adequate result, and should therefore be approved. *See, e.g.*, *Kelly*, 277 F.R.D. at 570 (finding the "significant risks" the settlement class members faced in adjudicating their claims; the uncertain "possibility of a large monetary recovery through future litigation" which "would occur only after considerable additional delay;" the "long and costly" litigation ahead where the defendant "has capable counsel at its disposal and intended to challenge nearly every aspect of Settlement Class Members' case;" and because even if the settlement class members were "to receive a favorable trial verdict, they still would have faced costly and lengthy appeals, delaying the receipt of benefits," all supported approving the settlement); *Keil*, 862 F.3d at 696 ("As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quotations omitted); *Marshall v. Nat'l Football League*, 787 F.3d 502, 515 (8th Cir. 2015) ("We have repeatedly rejected arguments that compromise was unnecessary because the party would have prevailed at trial.") (quotations omitted). Therefore, "[w]eighing the uncertainty of relief against the immediate benefit provided in the settlement" supports approval here, *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005), and "[t]he single most important factor" in evaluating the Settlement—"the merits of the plaintiffs' case weighed against the terms of the settlement," *Van Horn*, 840 F.2d at 607, as well as the "the complexity and expense of further litigation," *id.*, and "the duration, costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), support final approval of the Settlement.

**b.    The effectiveness of the proposed method of distributing relief to the Settlement Class supports approval of the Settlement.[11]**

Under the Agreement, the Net Settlement Fund will be distributed pursuant to a proposed Distribution Plan with settlement checks being delivered directly to each Settlement Class Member without the submission of a claim. Agreement, ¶ 2.3. This simple process for distributing settlement relief supports final approval of the Settlement. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable."); 4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.) (stating a class settlement distribution method should be "in as simple and expedient a manner as possible").

**c.    The terms for the award of attorneys' fees, including the timing of payment, support approval of the Settlement.[12]**

Class Counsel have sought their fee in the amount of one-third of the Settlement Fund created for the Settlement Class, providing a thorough analysis of the reasonableness of their request in their fee motion. Agreement, ¶ 8.1; Doc. 59. Because the fee request is reasonable, and in any event the Settlement is not conditioned upon the Court's approval of the fee award, Agreement, ¶ 8.4, the Court should approve the Settlement.[13]

**d.    There is no agreement required to be identified under Rule 23(e)(3).[14]**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any

---

[11] Fed. R. Civ. P. 23(e)(2)(C)(ii).

[12] Fed. R. Civ. P. 23(e)(2)(C)(iii).

[13] Similarly, Class Counsel have requested a Service Award of $25,000 for each Plaintiff and explained why this amount is reasonable. Agreement, ¶ 8.2; Doc. 59 at 40-41. The Parties' Agreement is not conditioned on the Court's approval of this request either. Agreement, ¶ 8.4.

[14] Fed. R. Civ. P. 23(e)(2)(C)(iv).

15

agreement made in connection with the proposal." There is no agreement between the Parties here, except those set forth or explicitly referenced in the Settlement Agreement. Accordingly, this factor is not relevant to whether the Settlement should be finally approved.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement.[15]

The Settlement's proposed distribution formula determines each Settlement Class Member's recovery under the Settlement according to the actual Monthly Deductions each paid under their Policy for COI and Expense Charges. There is an upward adjustment proposed for current policy owners to reflect that they are still paying allegedly inflated COI Charges, and the Missouri policy owners' share of the Settlement will be calculated using Monthly Deductions incurred after the damages period in *Vogt* where they have already received a share of the *Vogt* judgment to reflect damages incurred in the earlier period. The Court has concluded that "the Settlement treats the Settlement Class Members equitably relative to each other by awarding them a proportion of the Cost of Insurance and Monthly Expense Charge charges they each actually paid, in addition to providing equitable adjustments as to Settlement Class Members pursuant to the Distribution Plan." Doc. 54 at 2. Thus, this factor supports final approval of the Settlement.

### 5. State Farm's Financial Condition.[16]

State Farm has shown both its willingness and financial ability to litigate this case to the greatest extent possible and use every procedural and legal challenge available to it, and also is able to comply with its financial obligations under the Settlement. Plaintiffs thus submit that under Eighth Circuit precedent, this factor is neutral. *See Marshall*, 787 F.3d at 512 (finding this factor neutral where defendant was "in good financial standing, which would permit it to adequately pay

---

[15] *See* Fed. R. Civ. P. 23(e)(2)(D).

[16] *Van Horn*, 840 F.2d at 607 (factor 2).

for its settlement obligations or continue with a spirited defense in the litigation"); *Keil*, 862 F.3d at 697–98 (affirming finding that the defendant's financial condition factor was neutral where "[t]here is no evidence in the record calling [defendant's] financial condition into question," and the defendant had already funded the settlement).

### 6. The Amount of Opposition to the Settlement Supports Approval.[17]

As explained above, Plaintiffs and Class Counsel believe the Settlement is an excellent result for the Settlement Class, especially given the risks and delay of continued litigation, as detailed above. Doc. 47-2 (Siegel Decl.), ¶¶ 191, 197; *see Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (recognizing that when evaluating a settlement, the court should accord "deference to the attorneys in assessing their clients' claims/defenses"); *DeBoer*, 64 F.3d at 1178 (stating class counsel's "experience in this type of litigation" supports providing deference to their views as to the fairness of the settlement). Here, Class Counsel's experience litigating the cases in this Litigation and similar ones has provided them a thorough understanding of the risks and potential ranges of recovery in this case, which has allowed Class Counsel to fairly consider the merits of the claims here and the value of the Settlement to the Settlement Class. Plaintiffs also support and approve the Settlement, believing it to be in the best interests of the Settlement Class. Doc. 47-2 (Siegel Decl.), ¶ 199.

Further, the very small number of opt-outs and the complete absence of substantive objections to the Settlement reflects the fact that Settlement Class Members—like Class Counsel and Plaintiffs—overwhelmingly support the Settlement.[18] This favorable reception by the Settlement Class constitutes strong evidence of the fairness of the Settlement and supports its final

---

[17] *Van Horn*, 840 F.2d at 607 (factor 4).

[18] Class Counsel have also received anecdotal "thank yous" from members of the Settlement Class for taking on State Farm and achieving this Settlement.

approval. *Keil*, 862 F.3d at 698 (affirming approval of Settlement where the objections were "small in number, which speaks well of class reaction to the Settlement"); *DeBoer*, 64 F.3d at 1178 (holding that "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor" where five class members objected out of a class of 300,000); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than 4% of class); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *4 (D. Minn. Sept. 18, 2006) (concluding "[t]he lack of objections" and "the relatively small number of opt-outs . . . show strong support for the settlement from class members"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 & n.15 (3d. Cir. 1993) (recognizing class silence can be considered consent to settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (noting silence of majority of class may be attributed to agreement to proposed settlement).

Here, the fact that no Settlement Class Members raised any concerns about the Settlement in such a large Settlement Class strongly bolsters the conclusion that the Settlement is fair, reasonable, and adequate.

*    *    *

Accordingly, the Rule 23(e) and Eighth Circuit *Van Horn* factors support finding that the Settlement is fair, reasonable, and adequate, and therefore, it should be finally approved.

## IV. CERTIFICATION OF A SETTLEMENT CLASS REMAINS APPROPRIATE.

In its Preliminary Approval Order, the Court concluded the Settlement Class satisfied the requirements for class certification under Rule 23(a) and (b)(3). Doc. 54 at 3. Nothing has changed since the Court's ruling to call the Court's conclusions regarding class certification into question. Accordingly, for the reasons set forth in their preliminary approval motion, Plaintiffs ask that the Court certify the Settlement Class for purposes of entry of judgment on the Settlement.

## V.  THE COURT SHOULD GRANT CLASS COUNSEL'S MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES, AND SERVICE AWARDS.

On February 13, 2023, Class Counsel filed their Motion for Attorney's Fees, Costs, and Expenses ("Fee Motion") seeking one-third of the Settlement Fund and reimbursement of $1,358,443.06 in litigation costs and expenses and posted the motion to the Settlement Website the same day. *See* Doc. 59. As set forth in that motion and the supporting declarations of Class Counsel and Professor Robert Klonoff, a fee of one-third of the Settlement Fund is well supported by established law in this Circuit, and application of the *Johnson* factors. *Id.* Only one objection was lodged as to the requested attorney's fees; none were filed as to Class Counsel's request for reimbursement of litigation expenses. *See* Doc. 60-1.

"The absence of substantial objections by Settlement Class members to the fees requested by Class Counsel strongly supports approval." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. 2012).[19] Here, only one Settlement Class Member with one Policy objected out of 760,000 Policies, which is "minuscule when compared with other settlements[.]" *Keil*, 862 F.3d at 698 (characterizing 14 objections out of 3.5 million class members as "miniscule," which is a *larger* percentage of the class than one out of 760,000). Moreover, on the substance, the objection does not undermine the reasonableness of the fee requested. Rather, it supports the request.

Although not disclosed in his objection, the Objector (Doc. 60-1) is a State Farm sales

---

[19] *See also Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 206 (D.D.C. 2011) ("Tellingly, only one objection was received, which counsels in favor of granting class counsel's requested fee award."); *Soderstrom v. MSP Crossroads Apartments LLC*, No. CV 16-233 ADM/KMM, 2018 WL 692912, at *9 (D. Minn. Feb. 2, 2018) (finding requested fee reasonable, in part, based on the fact that "out of a Class of hundreds of Class Members, only one objection was filed"); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (concluding that the class "strongly supports" the fee request of 33% of the fund "based on the fact that only one untimely objection was made"); *accord In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (affirming district court's fee award where district court, in part, relied on the fact that "there was only one objection" to the fee request).

agent.[20] He has sold insurance, including "life insurance," as a State Farm agent for 46 years, which would include the period in which the Policies at issue in this lawsuit were sold.[21] He has viewed his "40+ year career" with State Farm as "rewarding." Despite his involvement and history with State Farm, he is a Settlement Class Member because he purchased a Policy. This background is relevant given that his Objection exhibits clear animosity toward plaintiffs' attorneys generally and this Litigation specifically. He views the Settlement as "legalized extortion" and concludes that State Farm did not do "anything incorrectly but had to settle to avoid continued harassment, continued legal expense and the uncertainty of this being tried before a jury." Doc. 60-1 at 2. He opposes, in part, the requested attorney's fees because it would "entic[e] legal extortion in the form of class action lawsuits" and proposes a lower fee of $76 million (approximately 23% of the Settlement Fund) because it "may [make Class Counsel] less likely to devote themselves to this form of extortion." *Id.* His generalized complaints about class actions and attorneys are not, however, a legal basis for awarding a fee smaller than the one requested.

First, the Objector's characterizations are inaccurate. As noted, a jury sitting in this District and some courts, including the Eighth Circuit, have concluded that State Farm breached the terms of its contract with policy owners. Thus, while it may be the Objector's opinion that State Farm did nothing wrong and was subject to "continued harassment," his unsubstantiated opinion must give way to the actual record.

Second, the Objector's entire justification for awarding a smaller fee is at odds with the governing legal standard. He posits that a smaller fee will *discourage* lawyers from representing similar clients on a contingent basis. Doc. 60-1 at 2. But the Court should award a fee that will

---

[20] *See* https://www.statefarm.com/agent/us/in/westfield/rick-aton-b6wcd1ys000, last visited Mar. 23, 2023.

[21] *See* https://www.rickaton.com, last visited Mar. 23, 2023.

create an "incentive [for lawyers] to consider pursuing a case such as this." *Tussey v. ABB, Inc.*, No. 06-CV04305-NKL, 2019 WL 3859763, at *3 (W.D. Mo. Aug. 16, 2019).[22] Doing so ensures that future consumers harmed by corporate malfeasance receive adequate representation against well-funded defendants so their claims can be decided on the merits. The Objector's philosophical disagreement with class actions (but acceptance of monetary benefit from this one) should not preclude *other* consumers (like the rest of the Settlement Class here) from the opportunity to have their claims heard in court.

None of the *Johnson* factors, detailed in the Fee Motion (Doc. 59), suggest the Court should attempt to ascertain the subjective merit of the underlying lawsuit or propriety of class actions generally in awarding the fee. *Cf. True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) ("The Court does not give any weight to arguments about the propriety of class action litigation[.]"). The requested fee is justified by the fact that Class Counsel obtained an exceptional monetary fund for the benefit of the Class, through significant legal risk and at personal financial risk on a contingent basis, regardless of any Settlement Class Member's subjective belief about State Farm's liability. *See generally* Doc. 59.

Finally, the Objector characterizes the requested fee as equating to $5,362.50 per hour of work performed by Class Counsel. Doc. 60-1 at 2. Although that figure is miscalculated and overstated based on the actual number of hours submitted, such a calculation is beside the point: as the Eighth Circuit has acknowledged, "overly emphasiz[ing] the amount of hours spent on a

---

[22] *See also Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1206 (S.D. Fla. 2006) ("Class Counsel has risked millions of dollars in un-reimbursed attorneys' time and additional millions in out-of-pocket costs. Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct.").

contingency fee case" would "distort the value of the attorneys' services.'" *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019).[23] Rather, the amount recovered—the Settlement Fund—is the more accurate measure of the attorney's services than the number of hours worked in a contingency class action. *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 2023 WL 2262878, at *47 (10th Cir. 2023) ("In a common fund case, the fund, itself, is the measure of an attorney's success."). The Objector admits that "33% is traditional practice" for a fee award. Unlike the other bases for the Objector's complaints, the customary fee is an actual *Johnson* factor the Court should consider in awarding fees. Doc. 59 at 30. Thus, the Objection supports, rather than detracts from, the requested fee in terms of the relevant legal factors.

For these reasons, the Court should overrule the objection and grant Class Counsel's Motion for Attorney's Fees, Costs, and Expenses.

Finally, no Settlement Class Member has objected to the requested Service Awards, indicating the Settlement Class's support for awarding $25,000 to each Plaintiff for their important contributions to this Litigation for the Settlement Class's benefit. *See* Doc. 59 at 48-49; *e.g.,*

---

[23] While a lodestar crosscheck is "not required" in the Eighth Circuit, *Keil*, 862 F.3d at 701, Class Counsel submitted a lodestar crosscheck analysis with their Fee Motion, showing hours spent on the Litigation through mid-January 2023 of 23,110 with an additional 1,888 hours anticipated on settlement administration tasks if the Settlement is finally approved, resulting in a lodestar multiplier of 5.9. Doc. 59 at 44. With the time spent and recovery obtained in *Vogt* included, the multiplier shown was 4.9. *Id.* at 46. As explained in the Fee Motion, a multiplier in this range, and even one larger, is reasonable given the circumstances of this unique case and risks to Class Counsel of the ten-jurisdiction litigation. Doc. 59 at 44-47. As set forth in the Supplemental Declaration of Mr. Siegel, attached hereto as Exhibit 2, Class Counsel has continued to spend time on this Litigation, spending an additional 656 hours on various litigation and settlement tasks, including working with the Settlement Administrator on the issuance of Class Notice, responding to class member inquiries about the Settlement, providing updates to the courts previously overseeing the Related Actions on the status of the settlement approval process here, and preparing the additional motions briefing and supporting material that we have submitted to the Court. *See* Ex. 2, ¶ 3. These additional hours at the previously identified hourly rates reduces the multiplier to 5.75, or if *Vogt* is included, 4.8, further establishing that Class Counsel's fee request is reasonable under a lodestar crosscheck analysis. *See id.* ¶ 4.

*Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *4 (W.D. Ky. Apr. 29, 2020) ("[T]he Court finds further support for the incentive award in the fact that no objections were filed."); *Waggoner v. U.S. Bancorp*, No. 5:14-CV-1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29, 2016) (same). As explained in Class Counsel's Fee Motion, the requested Service Awards are justified and consistent with other awards approved in the Eighth Circuit, particularly in relation to the size of this Settlement, Doc. 59 at 48-49, and should therefore be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement, grant Class Counsel's Motion for Attorney's Fees, Costs, Expenses and Service Awards, and enter judgment thereon.

Date: March 28, 2023

**STUEVE SIEGEL HANSON LLP**

*/s/ Norman E. Siegel*
Norman E. Siegel
siegel@stuevesiegel.com
Bradley T. Wilders
wilders@stuevesiegel.com
Lindsay Todd Perkins
perkins@stuevesiegel.com
Ethan M. Lange
lange@stuevesiegel.com
David A. Hickey
hickey@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

23

MILLER SCHIRGER, LLC
John J. Schirger
jschirger@millerschirger.com
Matthew W. Lytle
mlytle@millerschirger.com
Joseph M. Feierabend
jfeierabend@millerschirger.com
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

Attorneys for Plaintiffs and the Settlement Class

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ *Norman E. Siegel*
Attorney for Plaintiffs and the Settlement Class